**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Marvin Ruell POOLE,
Defendant-Appellant.**

**No. 76–3076.**

United States Court of Appeals,
Fifth Circuit.

Aug. 12, 1977.

Rehearing Denied Oct. 25, 1977.

John Levy, Metairie, La., for defendant-appellant.

Donald E. Walter, U. S. Atty., D. H. Perkins, Jr., J. Ransdell Keene, Asst. U. S. Attys., Shreveport, La., for plaintiff-appellee.

Before MORGAN and RONEY, Circuit Judges, and KING,* District Judge.

JAMES LAWRENCE KING, District Judge:

Marvin Ruell Poole was convicted in two counts of fraudulently selling a nonexistent heavy duty earth excavator to two separate victims in Illinois and Louisiana in violation of 18 U.S.C. § 2314.[1] He contends that reversible error occurred when the trial court denied his motion for judgment of acquittal as to the second count[2] because the proof failed to establish that the check he received from the sale ever traveled in interstate transportation.

He further suggests error in the admission into evidence of hearsay and prior similar offense testimony, as well as in the denial of a motion to suppress bank records. We conclude that the government failed to establish that the check Poole received from the Louisiana purchaser ever traveled in interstate commerce, and therefore reverse his conviction as to Count II. After carefully reviewing the defendant's other arguments, we find them to be without merit, and we affirm as to Count I.

## I. The Scheme to Defraud

Poole prepared a series of fake documents purporting to reflect ownership by two of his solely owned corporations of two Poclain Hydraulic Excavators and an Allis Chalmers Dozer. These documents included 1) false invoices from Bayou Equipment and Enterprises, Inc. purporting to reflect a sale of this equipment to Poole's Corporations, Marbane Realty Company and Marbane Construction Company; 2) copies of a fabricated check in the amount of $55,445.85, payable to, and allegedly endorsed by, Bayou Equipment and signed by Poole on behalf of Marbane, purportedly reflecting payment for one machine; and 3) a forged letter from Bayou to Poole purportedly verifying the sale of the equipment to Poole. These documents were false in their entirety; the transactions never took place, Bayou never sold this or any machinery to Poole, Bayou never received a $55,445.85 check from Marbane or endorsed such a check, Bayou never owned the machinery described in the documents, and the Poclain Excavators and Chalmers Dozer never existed except in the fertile imagination of the defendant Poole. To complete his documentation, Poole obtained blank Bayou invoices from his step-son-in-law (a co-owner of Bayou), filled them in with false serial numbers and other data pertaining to the nonexistent machinery, and forged endorsements to the doctored checks. He then possessed what appeared to be genuine documentation establishing ownership of the heavy equipment by his companies. Using the false documents as proof of ownership, Poole proceeded to sell the nonexisting machinery.

During November and December of 1973, Poole entered into four contracts for the sale and lease back of three Poclain Hydraulic Excavators and one Allis Chalmers Dozer. Relying on the false documentation as proof of ownership, Leasing Services, Inc. of Baton Rouge, Louisiana, paid Poole

---

* District Judge of the Southern District of Florida sitting by designation.

1. 18 U.S.C. § 2314, provides in pertinent part: Whoever transports in interstate or foreign commerce any . . . securities . . . of the value of $5,000 or more, knowing the same to have been . . . taken by fraud . . . [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both. . . .

2. Count II reads: "On or about November 2, 1973, through November 1973, in the Lafayette Division of the Western District of Louisiana, Marvin Ruell Poole, knowingly and wilfully with unlawful and fraudulent intent, did cause to be transported in interstate commerce from Lafayette, Louisiana, to Beaumont, Texas, a certain check No. 1621, dated November 2, 1973, in the amount of $55,445.85, drawn on Guaranty Bank and Trust Company, Lafayette, Louisiana, made payable to the order of Marbane Construction Company, signed by Marvin Poole, knowing the said money represented therein to have been taken by fraud, all in violation of 18 U.S.C. § 2314." As will be shown, *infra*, check No. 1621 was not taken by fraud, and check No. 3615, which was fraudulently obtained was never transported in interstate commerce.

$55,445.85 for Poclain Excavator # 0164426379R1, $55,445.85 for Poclain Excavator # 0164428412R3, and $45,360.00 for the Allis Chalmers Dozer. Poole deposited the check for Poclain Excavator # 0164426379R1 into his Marbane Realty account in the Guaranty Bank of Lafayette, Lousiana, and ultimately it was processed for payment at the Fidelity National Bank of Baton Rouge, Louisiana. On the same day that he received the Leasing Services check for the excavator, Poole wrote a check for an identical amount on his Guaranty Bank account payable to his Marbane Construction Company. This check was thereafter deposited in the Marbane account in the Citizens National Bank of Beaumont, Texas. After the Guaranty Bank in Louisiana paid the check the Marbane Realty account in that bank showed a balance of $79,506.44. Therefore, there had been sufficient funds in the Marbane Realty Account to pay the Guaranty Bank check without applying the proceeds of the Leasing Services check, and the fact that the two checks were identical is immaterial.

A few days after the sale to Leasing Services, Inc., Poole sold the identical non-existent Poclain Excavator to Trans Mutual Investment Company of Chicago, Illinois, using the same false documentation to establish ownership and receiving an additional $55,445.85. The check from Trans Mutual was deposited in the American Bank in Opelousas, Louisiana in Poole's Marbane Realty-Construction Company account. American Bank placed the check in the stream of interstate commerce for payment from the Trans Mutual account at Lakeview Bank in Chicago, Illinois.

Poole, as President of Marbane Realty, gave bills of sale for the twice-sold non-existent excavator to both Leasing Services and Trans Mutual, representing to each that Marbane Realty was the absolute owner of the property with full power to sell. Both transactions were consummated under sale lease-back contracts whereby Poole re-tained possession of the machinery and the purchasers acquired the right to possession only in the event of default in lease payments. The fraud was discovered after Poole defaulted and the machinery could not be found.

## II. Interstate Transportation of Securities

That the appellant Poole conceived and perpetrated a scheme to defraud was established beyond any reasonable doubt in the trial court. However, the statute under which the appellant was charged requires the interstate transportation of the fraudulently obtained security [3] as an essential element for conviction in a federal court. "To constitute a violation of [this section], it is not necessary to show that petitioners actually . . . transported anything themselves; it is sufficient if they caused it to be done." *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435, 444 (1954). The law clearly establishes that a person causes a security taken by fraud to be transported in interstate commerce when that person "knowingly cashes [or deposits] a fraudulent check in one state drawn on a bank in another state." *United States v. Hill*, 468 F.2d 899 (5th Cir. 1972). This is so because, as the court reasoned in *Pereira*, "[i]t is common knowledge that such checks must be sent to the drawee bank for collection". 347 U.S. at 9, 74 S.Ct. at 363, 98 L.Ed. at 444, 445.

The transactions involved in Count I provide two clear examples of the interstate transportation of a security taken by fraud. When Poole caused Trans Mutual to send a check from Chicago, Illinois to Lafayette, Louisiana, he caused that check to cross state lines. The causation resulted from Poole's having provided falsified invoices and a falsified check to show a non-existent sale of a nonexistent excavator by Bayou Equipment to Marbane Realty as an inducement for Trans Mutual to purchase the excavator.

---

**3.** *See* n. 1. Furthermore, a "security" as defined in 18 U.S.C. § 2311 "includes any . . . check . . . .."

■ The second example of the interstate transportation of a security taken by fraud occurred when Poole deposited the Trans Mutual check in the Marbane Realty account in the American Bank at Opelousas, Louisiana. By depositing a check drawn on an Illinois bank in a Louisiana bank, Poole knew or should have known that the Louisiana bank would send the check to the Illinois bank for collection, and thus that it would cross state lines. *United States v. Hill*, 468 F.2d 899 (5th Cir. 1972).

In contrast to the events alleged and proved in Count I, Count II does not charge[4] and the government failed to prove any interstate transportation of a security taken by fraud. There is no doubt that Leasing Services' check for $55,445.85 was a security taken by fraud, because Poole had induced Leasing Services to issue the check by showing a false invoice purporting to reflect Poole's ownership of the excavator. However, Leasing Services' check was drawn on a Baton Rouge, Louisiana bank delivered to Poole in Lafayette, Louisiana, deposited in a Lafayette bank, and returned to the drawee bank in Baton Rouge for collection. This check never left Louisiana and therefore never entered the stream of interstate commerce.

It is the government's position that the transfer of moneys from Guaranty Bank in Lafayette to the Citizens Bank in Beaumont, Texas was a transfer in interstate commerce of the exact moneys taken by fraud from Leasing Services.[5] In support of this position, the government cites *United States v. Walker*, 176 F.2d 564 (2d Cir.), *cert. denied*, 338 U.S. 891, 70 S.Ct. 239, 94 L.Ed. 547 (1949). In that case, the defendant obtained through fraud a check for $26,000 from his victim in Houston, Texas.

He then cashed the check at the victim's bank and transferred the proceeds into two checks (one for $10,000 and one for $7,000), $3,000 in travelers checks, and $6,000 in cash. Later that day he exchanged the $7,000 check for 100 travelers checks. The evidence showed that he later transported more than $5,000 of the travelers checks from Houston to New York. On appeal the defendant argued that no interstate transportation of a security occurred because he did not take the check he had obtained through fraud with him to New York. Responding to this argument, Judge Learned Hand, writing for the court, said,

it cannot be seriously argued that, if the accused defrauded his victim of bills of a large denomination and changed them into smaller bills, or vice versa, he would escape; and we recognize no distinction between such a case and the exchange of money from ordinary bank cheques into Travelers cheques. 176 F.2d at 566.

Thus, *Walker* holds that a mere change in the *form* of the fraudulently obtained money is not fatal to a conviction for interstate transportation under 18 U.S.C. § 2314 when it is the changed form of the money rather than the original form that is transported interstate.[6]

■ This case is distinguishable from *Walker* because there was no change in form of the Leasing Services' check for $55,445.85. The check was simply deposited into an already existing account[7] and commingled with other funds in that account. Poole then issued a check, which was drawn on his own Marbane Realty account and was *not* taken by fraud, and thereafter transported his own check across state lines to Beaumont, Texas to be deposited. When his own check was returned to the Guaran-

---

4. *See* n. 2.

5. The government's position on how and when the interstate transportation occurred is different from that charged in Count II.

6. *See United States v. Caci*, 401 F.2d 664, 672 (2d Cir.), *cert. denied*, 394 U.S. 917, 89 S.Ct. 1180, 22 L.Ed.2d 450 (1968). *Caci* is the only decision which has cited *Walker* for this specific holding.

7. It is significant that the check was deposited in a preexistent account: had Poole opened a new account with the fraudulently acquired check, then written a check for the full amount on the new account and transported this check across state lines for deposit, *Walker* would apply because there would have been a mere change in the form of the fraudulently obtained security.

**536**

ty Bank in Lafayette, Louisiana for payment, there were sufficient surplus funds in the Marbane Realty account to pay that check without applying the proceeds of Leasing Services check.[8]

We therefore hold that the security taken by fraud in Count II did not travel in interstate commerce either in its original or in a changed form. It was therefore error for the trial judge to deny appellant's motion for a judgment of acquittal as to Count II. The conviction on that count is hereby reversed, and the case is remanded to the trial court with directions to enter a judgment of acquittal.

■ Additionally, Poole asserts that it was reversible error for the trial court to deny his motion to suppress certain evidence and the derivative fruits therefrom. He complained in his motion to suppress of two acts by F.B.I. Agent Bertinot. First, he claims that Bertinot searched Poole's business office without either his consent or a search warrant and that "he viewed certain papers on defendant's desk." However, no evidence was seized, no derivative fruits were obtained, nothing was introduced in evidence at appellant's trial as a result of this search, and thus there was nothing for the trial court to suppress. As this court has said, "[an] appellant[ ] cannot complain of evidence which might have been discovered and introduced, but was not. . . . " *United States v. Guinn,* 454 F.2d 29 (5th Cir.), *cert. denied,* 507 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972). Second, Poole complains of Agent Bertinot's warrantless search of his bank records. Bertinot received permission from the Vice President of the Guaranty Bank to view the microfilm of appellant's bank records and during this search the agent discovered the check from Leasing Services, Inc. to Poole. He also discovered the check by which Poole transferred money from his bank in Lafayette, Louisiana to his account in the Citizens Bank in Beaumont, Texas. The evidence obtained as a result of this search was used both as a basis for the allegations contained in Count II and as "similar fact" evidence.

■ In *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), the Supreme Court held that a person has no protected Fourth Amendment interest in the privacy of his bank records, and it was therefore irrelevant whether the subpoenas used to obtain a defendant's bank records were defective. In this case, no subpoenas were issued prior to the search, but the Bank's permission for the search was expressly given. In light of *Miller,* it is irrelevant whether subpoenas were obtained for the search. We therefore hold that the trial court was correct in denying Poole's motion to suppress the evidence obtained from his bank records.

We have considered the remaining suggestions of error as to Count I and found them meritless: we therefore affirm the conviction on that count.

AFFIRMED IN PART, REVERSED IN PART, with directions.

---

8. We are not confronted with the problem of whether a different result would obtain if there had been insufficient funds in Poole's Marbane Realty account to pay the Texas check when it was ultimately presented for payment.