933 F.2d 1010
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alexander Michael BUTCHER, Defendant-Appellant.
 No. 90-1745.
 United States Court of Appeals, Sixth Circuit.
 May 23, 1991.
 
 Before KENNEDY and BOYCE F. MARTIN, Jr., Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Alexander Michael Butcher appeals his conviction on five criminal counts of mail fraud and interstate transportation of stolen money, in violation of 18 U.S.C. Secs. 1341 and 2314. Butcher challenges the district court's findings as to the validity of the indictment, the sufficiency of the evidence, and the legality of his multiple convictions. For the following reasons, we affirm in part, and reverse in part.
 
 
 2
 In 1971, the Flint-Woodcrest Apartments Limited Partnership was formed to acquire and operate an apartment complex in Westland, Michigan known as the Woodcrest Villa Apartments. Butcher was one of the general partners of Flint-Woodcrest. Later that same year, Butcher formed a separate co-partnership with two of his law partners, Erwin Rubenstein and Jerome Allen. The purpose of that partnership, known as RBA, was to invest in the Flint-Woodcrest development. Each partner contributed approximately $11,000 to the partnership in exchange for a one-third partnership interest. The partnership then spent $33,000 to obtain an interest in Flint-Woodcrest. RBA was later converted to a limited partnership with Butcher as the sole general partner; however, Rubenstein and Allen retained their one-third interest in RBA.
 
 
 3
 In 1974, Flint-Woodcrest sold the Woodcrest Villa Apartments. The sale consisted of a ten-year land contract with most of the proceeds to be collected upon balloon payment of approximately $2,000,000 to be paid at the end of the tenth year. Though some changes were made in the payment date, Butcher repeatedly reassured Rubenstein and Allen of the anticipated pay-out.
 
 
 4
 RBA received $139,850 as its first distribution from the sale in February of 1986. Butcher directed Flint-Woodcrest that the money owed to RBA be wired to a bank account of a Butcher enterprise called Michigan North Properties. Butcher then used the full amount to satisfy a personal debt. When Rubenstein and Allen demanded payment, Butcher told them he had been forced to "pledge [their] interest in [Flint-Woodcrest] to another general partner for some loan," but promised payment would be made in the future. Thereafter, Butcher mailed Rubenstein only one check for $5000 and Allen two checks totalling $20,000.
 
 
 5
 A second distribution was made in June of 1987. That check, made payable to the order of RBA associates for $19,105.52, was mailed directly to Butcher and was endorsed "Pay to the order of Harbor Springs Management Co, /s/ R.B.A. Associates." Neither Rubenstein nor Allen received any of the proceeds from the second distribution.
 
 
 6
 Butcher was subsequently indicted on four counts of mail fraud and three counts of interstate transportation of stolen money. He was convicted of two counts of mail fraud and all three counts of interstate transportation of stolen money. He was sentenced to five concurrent terms of four and one-half years imprisonment, restitution in the amount of $86,637, and special assessments of $250. The district court denied Butcher motions for relief from judgment.
 
 
 7
 Butcher's first argument is that the indictment fails to allege offenses sufficient to support a conviction for either mail fraud or the interstate transportation of stolen money. On this we disagree. A violation of the mail fraud statute, 18 U.S.C. Sec. 1341, need only contain three elements: "1) a scheme to defraud 2) which involves a use of the mails 3) for the purpose of executing the scheme." United States v. Henson, 848 F.2d 1374, 1378 (6th Cir.1988), cert denied, 488 U.S. 1005 (1989). Counts 3 and 4 of the indictment clearly identify two distinct uses of the mails in furtherance of Butcher's scheme to defraud Allen and Rubenstein. Because a challenge to the validity of an indictment will ordinarily fail "as long as the indictment, by fair implication, alleges an offense recognized by law," the district court did not err in finding the indictment sufficient as to the mail fraud count. United States v. Joseph, 781 F.2d 549, 554 (6th Cir.1986).
 
 
 8
 The same is true for Butcher's claim regarding the interstate transportation of stolen money. Under 18 U.S.C. Sec. 2314 it must be proved: 1) that the defendant has transported money in interstate or foreign commerce, 2) that the money transferred had a value of at least $5000, and 3) that the defendant knew the money had been stolen, converted or taken by fraud. Dowling v. United States, 473 U.S. 207, 214 (1985). Butcher's primary claim is that count six of the indictment, which alleges Butcher drew a $25,000 check out of the Michigan North Properties account, fails to satisfy the third prong because that account included funds that had not been stolen, converted or taken by fraud. See United States v. Poole, 557 F.2d 531 (5th Cir.1977). We agree with the district court that commingling of converted funds will not insulate an individual from prosecution for interstate transportation of stolen money. United States v. Cardall, 885 F.2d 656 (10th Cir.1989).
 
 
 9
 Butcher's second argument is that there was insufficient evidence to support his conviction. The record includes substantial evidence to support the government's assertion that the RBA limited partners had an interest in the Flint-Woodcrest proceeds paid to RBA. No error resulted from Butcher's conviction for wrongfully converting those funds. However, as to Count VII, there appears to be insufficient evidence to have established that the $19,105.52 was stolen at the time it was transported from Florida to Michigan. Therefore as to this count, we reverse and dismiss.
 
 
 10
 Butcher's final claim is that his acquittal on counts one and two bars his conviction on the remaining counts as multiple prosecution for the same conduct in violation of the double jeopardy clause as interpreted in Grady v. Corbin, 110 S.Ct. 2084 (1990). In Grady the court held that "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Id. at 2093. As critical as the Grady analysis is to some cases, it is irrelevant in this case because the protection afforded by Grady does not extend to alleged violations contained within one indictment. United States v. Sammons, 918 F.2d 592, 604-05 n. 21 (6th Cir.1990).
 
 
 11
 All other issues raised are without merit. Because of the sentence imposed by the district court in this case, the dismissal of Count VII does not affect the defendant's sentence. We therefore affirm the district court except insofar as noted.