**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert Earl STOUFFER, and James Dale Atchley, Defendants– Appellants.**

No. 91–6133.

United States Court of Appeals, Fifth Circuit.

March 16, 1993.

Rehearing and Rehearing En Banc Denied April 29, 1993.

919

David Cunningham, Houston, TX, for Atchley.

Jeffery Babcock, Paula Offenhauser, Asst. U.S. Attys., Ronald G. Woods, U.S. Atty., Houston, TX, for U.S.

Before REAVLEY, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Raising a variety of challenges, Robert Stouffer and James Atchley appeal their convictions and sentences for aiding and abetting the following crimes: the commission of mail fraud, in violation of 18 U.S.C. §§ 2, 1341; the commission of wire fraud, in violation of 18 U.S.C. §§ 2, 1343; and the interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2, 2314. Finding no grounds for reversal, we affirm.

I

Stouffer and Atchley's convictions arose from a fraudulent investment scheme involving their corporation, First United Trust Company ("FUTCO").[1] FUTCO's corporate purpose was to solicit and invest assets of individual investors.

FUTCO's accounts were varied, but only two were the focus of the indictment: (1) the retirement fund account; and (2) the daily income trust account ("DITA"). The retirement fund account consisted primarily of self-directed individual retirement accounts ("IRAs").[2] The DITA, as represented by the defendants, was to be akin to a bank account, whose funds would be placed in highly liquid investments including certificates of deposit, money market accounts, and Eurodollars. The monies deposited in the DITA were also to be available for withdrawal at any time. The DITA was FUTCO's financial reservoir, as it contained all the monies waiting to be directed,[3] interest and dividend payments from self-directed accounts, and matured investments.

Rather than investing the DITA funds in highly liquid accounts, Stouffer and Atchley used the DITA funds to pay for extravagant operating expenses, including: (1) salary bonuses to themselves; (2) four airplanes; and (3) a townhouse in Dallas, together with extensive personal expenditures purportedly connected to the maintenance of that townhouse. Stouffer and

---

1. Atchley helped form FUTCO in 1980, and served as its President until 1983, when he resigned to become the Chairman of the Board and CEO of Sunwealth Financial Corporation ("Sunwealth"), the parent holding company of FUTCO. Stouffer was Vice-President of Marketing at FUTCO from 1983–1986, and afterwards became the President of Sunwealth.

2. Self-directed accounts were those in which investors or their representatives chose the form of investment and FUTCO served merely as custodians. FUTCO earned money by charging a fee on the self-directed accounts.

3. When investors initially deposited money with FUTCO, even if the funds were earmarked for a self-directed account, the money would be deposited by FUTCO employees into the DITA, until the money could be invested in accordance with the directions of each investor.

Atchley also invested the DITA funds on speculative real estate transactions.

In 1985, the Texas Banking Department ("TBD") examined the records of FUTCO, and issued a report expressing concern over, *inter alia*, the conflict between Atchley's position as CEO at both Sunwealth and the banks where FUTCO invested monies, the absence of any clear corporate policies and structure at FUTCO, and the absence of any separation between FUTCO's trust and operating accounts. Atchley subsequently resigned as CEO of Sunwealth, and became a consultant to FUTCO.

In December 1987, the TBD ordered Atchley to sever all ties with FUTCO, and placed the company under the active supervision of one of its agents. Shortly thereafter the State Banking Commissioner ordered that FUTCO cease doing business because of its inability to meet a withdrawal demand. FUTCO subsequently went into receivership, and liquidation commenced. In late 1988, the TBD again examined FUTCO, and discovered that the DITA funds had been used to fund extravagant operating expenses and speculative real estate ventures.

Stouffer and Atchley were subsequently charged in a fifteen-count indictment with: (1) aiding and abetting the commission of mail fraud (Counts 1–8), in violation of 18 U.S.C. §§ 2, 1341 (1988); (2) aiding and abetting the commission of wire fraud (Counts 9–11), in violation of 18 U.S.C. §§ 2, 1343 (1988); and (3) aiding and abetting in the interstate transportation of stolen checks (Counts 12–15), in violation of 18 U.S.C. §§ 2, 2314. Before trial, the district court denied Stouffer's motion for severance.

Stouffer and Atchley were convicted on all counts of the indictment. Stouffer was sentenced to forty-six months imprisonment on each of counts 8 and 15, such terms to run concurrently, and sixty months imprisonment on each of counts 1–7 and 9–14, such terms to run concurrently with each other and with the terms imposed for counts 8 and 15. Atchley was sentenced to sixty months imprisonment on each count, such terms to run concurrently. In addition, both men were sentenced to three years of supervised release on counts 8 and 15, such terms to run concurrently, and were held jointly and severally liable to pay restitution in the amount of $7.5 million to the Texas Banking Department.

On appeal, Stouffer contends that the district court: (1) abused its discretion by admitting certain evidence; (2) erred in instructing the jury; (3) erred in determining his base offense level; (4) erred in failing to resolve disputed issues of fact for sentencing purposes, pursuant to Fed. R.Crim.P. 32; and (5) erred in ordering restitution for all losses caused by the scheme to defraud. In addition, Stouffer argues that insufficient evidence supports his conviction.

Atchley contends on appeal that the district court: (1) abused its discretion by denying his motion for severance; (2) failed to comply with Fed.R.Crim.P. 32; (3) erred in calculating his base offense level; (4) erred in departing upward from the sentencing guidelines; and (5) erred in ordering restitution for all losses caused by the scheme to defraud. Atchley also argues that insufficient evidence supports his conviction.[4]

## II

### A

Stouffer and Atchley both contend that insufficient evidence supports their convictions. In assessing a challenge to the sufficiency of the evidence, we must consider the evidence in the light most fa-

---

**4.** Stouffer and Atchley filed separate briefs on appeal, noticing different points of error. Atchley seeks to adopt by reference the different contentions raised by his co-defendant, Stouffer, pursuant to Fed.R.App.P. 28(i). *See* Brief for Atchley at 47. Because Stouffer's different contentions are fact-specific, and thus, not equally

vorable to the verdict and must afford the government the benefit of all reasonable inferences and credibility choices. *United States v. Ayala,* 887 F.2d 62, 67 (5th Cir. 1989). The evidence is sufficient if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt based upon the evidence presented at trial. *Id.* Stouffer and Atchley specifically claim that the government failed to prove that: (1) they possessed the requisite intent to harm investors; and (2) stolen checks were transported in interstate commerce.

(1)

■ To convict Stouffer and Atchley of mail, wire, and travel fraud, the government had to prove, *inter alia,* that they possessed a fraudulent intent. *See United States v. St. Gelais,* 952 F.2d 90, 95 (5th Cir.1992) (holding that convictions under the mail and wire fraud statutes require a showing of fraudulent intent); *United States v. Starr,* 816 F.2d 94, 98 (2d Cir. 1987) (same); *United States v. Bryant,* 770 F.2d 1283, 1288 (5th Cir.1985) (holding that conviction under statute proscribing the interstate transportation of stolen goods requires a showing of fraudulent intent), *cert. denied,* 475 U.S. 1030, 106 S.Ct. 1235, 89 L.Ed.2d 343 (1986).[5] The element of fraudulent intent, in turn, requires a showing that defendants contemplated or intended some harm to the property rights of their victims. *See St. Gelais,* 952 F.2d at 95 ("Only a showing of intended harm will satisfy the element of fraudulent intent." (quoting *Starr,* 816 F.2d at 98)). Stouffer and Atchley contend on several grounds that the government failed to prove that they possessed the intent to harm investors.

■ Stouffer and Atchley first contend that they lacked the requisite intent to harm investors because of their good faith reliance upon the authority of the TBD after it assumed control in December 1987. *See* Brief for Stouffer at 26–28; Brief for Atchley at 18–23. The record indicates, however, that Stouffer and Atchley did not notify the state banking officials that they were providing fraudulent information to prospective FUTCO clients, *see* Record on Appeal, vol. 24, at 2069; and that the state banking officials did not advise Stouffer or Atchley to do so. *See id.* at 2055. Therefore, Stouffer and Atchley did not rely upon the authority of the TBD, and we find the good faith defense inapplicable.

■ Second, Atchley maintains that his removal from FUTCO in December 1987 constituted a withdrawal from the scheme to defraud, thereby negating any intent to harm investors. *See* Brief for Atchley at 19. We disagree. Withdrawal from a joint criminal enterprise, such as a scheme to defraud, requires that the proponent show that he affirmatively took actions inconsistent with the object of the enterprise, and communicated his intent to withdraw in a manner reasonably calculated to reach his cohorts. *United States v. United States Gypsum Co.,* 438 U.S. 422, 464–65, 98 S.Ct. 2864, 2887, 57 L.Ed.2d 854 (1978); *see United States v. Martino,* 648 F.2d 367, 405 (5th Cir.1981) (applying withdrawal defense to scheme to defraud). Because Atchley can only show that he was forcibly removed from FUTCO by government authorities, he cannot prove that he took an affirmative action inconsistent with the scheme to defraud. *Cf. United States v. Branch,* 850 F.2d 1080, 1082–83 (5th Cir.1988) (holding that the arrest of a party involved in a conspiracy does not constitute

applicable to Atchley, we consider the merits of these contentions only as to the party raising them. *See United States v. Harris,* 932 F.2d 1529, 1533 (5th Cir.) ("[A] motion [under Rule 28(i)] to adopt [an] appellant's [fact-specific] argument, without more, is insufficient to raise that point of error as to the adopting co-appellant[].") , *cert. denied,* —— U.S. ——, 112 S.Ct. 270, 116 L.Ed.2d 223 (1991).

5. The indictments against Stouffer and Atchley alleged that they acted with "unlawful and fraudulent intent" in causing stolen checks to be transported in interstate commerce. Record on Appeal, vol. 5, at 2, 93.

an affirmative showing of withdrawal or abandonment), *cert. denied*, 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 806 (1989). Therefore, Atchley cannot show that he did not possess the requisite intent to harm investors after his removal from FUTCO. *See Martino*, 648 F.2d at 405 (holding that participant in scheme to defraud "can disclaim responsibility for acts of his coschemers only if he undertakes some affirmative act of withdrawal").

■ Lastly, Stouffer argues that he did not intend to harm FUTCO's investors because of his belief that FUTCO's corporate charter authorized investments in all types of ventures. *See* Brief for Stouffer at 23–26. This argument is without merit. The evidence at trial established that Stouffer: (a) instructed employees to misrepresent to clients that DITA funds were fully insured, *see id.*, vol. 19, at 910, 920; (b) misrepresented to clients and employees that the DITA funds were invested in CDs, or other liquid instruments, *see* Record on Appeal, vol. 23, at 1837–41; (c) admonished employees not to divulge the true nature of FUTCO's investments to clients, *see id.*, vol. 23, at 1919; and (d) expressed his displeasure when FUTCO employees recruited non-liquid investments, *see id.*, vol. 19, at 915, 920. Based upon this evidence, a reasonable jury could have found that Stouffer did not genuinely believe that FUTCO's corporate charter authorized all types of investments, and that he intended to harm FUTCO's investors.

### (2)

■ To convict Stouffer and Atchley for the interstate transportation of stolen checks, the government also had to prove that the investors' checks were fraudulently obtained or stolen when the checks crossed state lines. *See* 18 U.S.C. § 2314. Stouffer and Atchley contend that the government failed to show that the checks listed in Counts 12–14 of the indictment

were stolen.[6] *See* Brief for Stouffer at 28–30; Brief for Atchley at 17. Stouffer specifically claims that those checks were all deposited "as directed" into the DITA fund, and thus were not stolen. *See* Brief for Stouffer at 30. We disagree. The evidence at trial established that those checks were obtained from unsuspecting investors who were purposefully misled about the safety of their money at FUTCO. *See* Record on Appeal, vol. 23, at 1869–79 (Count 12); *id.*, vol. 19, at 928–29, 953 (Count 13); *id.*, vol. 21, at 1412–26 (Count 14). Therefore, the theft by fraud was complete when Stouffer and Atchley deposited the checks with FUTCO. *See United States v. Poole*, 557 F.2d 531, 534–35 (5th Cir.1977) (holding that government could establish § 2314 violation where defendant deposited fraudulently-obtained check, after causing such check to travel across state lines).

■ Citing *Poole*, Stouffer and Atchley further maintain that their conviction under Count 15—for causing the interstate transportation of a stolen check in the amount of $107,782.31—should be reversed because FUTCO retained sufficient monies to cover the check when it closed. *See* Brief for Stouffer at 30; Brief for Atchley at 18. In *Poole*, the defendant deposited a fraudulently-obtained check into an existing account containing untainted funds. *See id.* at 535. We reversed the defendant's conviction because sufficient untainted funds existed to cover the check without using the funds obtained illegally. *See id.* at 536. The instant case is distinguishable because FUTCO—due to the misrepresentations about the safety of its funds and the nature of its investments—obtained all its funds through fraud. Therefore, Stouffer and Atchley could not cover the check at issue with anything but tainted funds. Accordingly, we find this argument without merit.

---

**6.** Stouffer and Atchley do not dispute that they caused the checks listed in Counts 12–14 to

move in interstate commerce. *See* Brief for Stouffer at 28–30; Brief for Atchley at 14–18.

## B

 Stouffer next argues that the district court abused its discretion by admitting into evidence statements made by individuals who participated in the fraudulent scheme before Stouffer began working for FUTCO. He specifically contends that this evidence was beyond the temporal scope of the offenses charged in the indictment. We review for abuse of discretion the trial court's decision to admit evidence. *United States v. Liu,* 960 F.2d 449, 452 (5th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 418, 121 L.Ed.2d 341 (1992). Because the evidence at issue was relevant to establish how FUTCO's scheme to defraud came about and how it was structured, and the probative value of the evidence was not substantially outweighed by any risk of unfair prejudice, we conclude that the district court did not abuse its discretion in admitting this evidence. *See United States v. Lokey,* 945 F.2d 825, 834–35 (5th Cir.1991) (holding that district court did not abuse its discretion by admitting into evidence testimony of transactions beyond temporal scope of indictment where the probative value of such evidence was not substantially outweighed by risk of unfair prejudice).

## C

 Atchley contends that the district court abused its discretion by denying his motion for severance.[7] We review the district court's denial of a motion for severance for abuse of discretion. *United States v. Rocha,* 916 F.2d 219, 227 (5th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991). "To demonstrate an abuse of discretion, a defendant must show that he suffered specif-

ic and compelling prejudice against which the district court could not provide adequate protection, and that this prejudice resulted in an unfair trial." *Id.*

 Atchley specifically argues that he suffered compelling prejudice because he and his co-defendant, Curtis Durio,[8] presented mutually antagonistic defenses at trial. We disagree. Even assuming, arguendo, that Atchley and Durio did present antagonistic defenses, as may have been evidenced by the accusations made by Durio's counsel during closing argument, we conclude that severance was not warranted. In *Zafiro v. United States,* — U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), the Court expressly declined to adopt a bright-line rule requiring severance whenever co-defendants present antagonistic defenses, even when prejudice is shown. *Id.* at —— —— ——, 113 S.Ct. at 937–38. Instead, the Court held that "a district court should grant a severance ... only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at ——, 113 S.Ct. at 938. The Court added that "limiting instructions often will suffice to cure any risk of prejudice." *Id.* Here, the district court instructed the jury to consider the evidence as to each defendant "separately and individually," and not consider comments by counsel as substantive evidence. *See id.,* vol. 29, at 3075, 3080. Such instructions are sufficient to cure any prejudice caused when co-defendants accuse each other of the crime. *See Zafiro* at ——, 113 S.Ct. at 939 ("[E]ven if there were some risk of prejudice, here it is of the type that can be

---

7. The government argues that Atchley failed to preserve this issue for review because he failed to renew his request for severance at the close of all the evidence. *See* Brief for United States at 33–34. Atchley filed a pre-trial motion to sever, and we do not require a defendant to re-raise the issue at trial. *See United States v. Means,* 695 F.2d 811, 818 (5th Cir.1983) ("[T]his [C]ircuit does not recognize waiver of severance upon non-renewal of the motion at trial....").

8. Durio served as FUTCO's Vice–President of Finance from 1981–1983, and afterwards became President of FUTCO. Durio was convicted on all fifteen counts of the indictment, along with Stouffer and Atchley, but did not file an appeal.

cured with proper instructions, and 'juries are presumed to follow their instructions.' " (quoting *Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987))). Accordingly, the district court did not abuse its discretion by denying Atchley's motion for severance.

### D

Stouffer next raises several challenges to the district court's jury instructions, contending that the district court: (1) erred in charging the jury on deliberate ignorance; (2) abused its discretion by refusing to submit a specific instruction on the good-faith defense; and (3) erred in refusing to submit a limiting instruction as to testimony describing transactions outside the indictment.

### (1)

Stouffer first contends that the district court erred in charging the jury on deliberate ignorance over his objection.[9] *See* Brief for Stouffer at 32–35. We review jury instructions to determine "whether the court's charge as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *United States v. August*, 835 F.2d 76, 77 (5th Cir.1987).

Stouffer argues that the deliberate ignorance instruction was unsupported by the facts of the case.[10] A deliberate ignorance instruction is proper when the evidence at trial, viewed in the light most favorable to the prosecution, shows that "the defendant was subjectively aware of a high probability of the existence of the illegal conduct ... [and] the defendant purposely contrived to avoid learning of the conduct." *United States v. Breque*, 964 F.2d 381, 388 (5th Cir.1992) (citing *United States v. Lara–Velasquez*, 919 F.2d 946,

951 (5th Cir.1990)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1253, 122 L.Ed.2d 652 (1993). As we discussed earlier in concluding that Stouffer intended to harm FUTCO's investors, *see supra* Part IIA(3), the evidence presented was sufficient to show that Stouffer had a subjective awareness of a high probability that he was involved in illegal activity. Furthermore, sufficient evidence demonstrated that Stouffer purposely contrived to avoid learning of the illegal conduct. Despite knowing that he and his cohorts were using the DITA funds to pay for pleasure trips, exorbitant bonuses, and speculative real estate ventures, Stouffer blindly accepted without further investigation Atchley's representations that FUTCO's corporate charter authorized all of these "investments." Therefore, Stouffer's conduct suggests a conscious effort to avoid incriminating knowledge. *See United States v. Daniel*, 957 F.2d 162, 169–70 (5th Cir.1992) (holding that defendant's failure to inspect overwhelmingly suspicious conduct suggested a conscious effort to avoid incriminating knowledge). Accordingly, the district court did not err in giving a deliberate ignorance instruction.

### (2)

Stouffer next argues that the district court abused its discretion by refusing to submit a proposed jury instruction on Stouffer's good faith reliance on government authority before December 1987. The district court, over Stouffer's objection, only instructed the jury on Stouffer's good faith reliance after December 1987. We review the district court's refusal to submit a proposed jury instruction for abuse of discretion. *United States v. Greig*, 967 F.2d 1018, 1027 (5th Cir.1992). "In determining whether the court abused its discretion, we must determine whether the requested instruction (1) is a correct statement of the law; (2) was substantially given in the charge as a whole; and (3)

---

**9.** The district court instructed the jury as follows:

> You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would have otherwise been obvious to him. While knowledge on the part of a defendant can not be established merely by demonstrating that the

defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.

Record on Appeal, vol. 29, at 3093.

**10.** Stouffer does not claim that the instruction was an incorrect statement of law. *See* Brief for Stouffer at 32–35.

concerns an important aspect of the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense." *Id.* Because Stouffer's pre–1987 good faith defense was substantially given in the charge as a whole,[11] and Stouffer cannot show that the failure to give a specific good faith instruction impaired his ability to present his defense of lack of fraudulent intent, the district court did not abuse its discretion in refusing to give the requested instruction. *See Daniel,* 957 F.2d at 170 (finding no abuse of discretion by refusal to give good faith instruction where jury properly instructed on the requisite mental state).

### (3)

■■■ Stouffer also argues that the district court abused its discretion by refusing to submit a limiting instruction regarding testimony of financial planners and depositors who described transactions outside the indictment. *See* Brief for Stouffer at 38–40. He specifically argues that this testimony was extrinsic act evidence under Fed.R.Evid. 404(b), and thus required a limiting instruction as to its proper use. *See id.* We disagree because evidence relevant to establish the existence of a criminal enterprise is not extrinsic to the crime charged. *See United States v. Royal,* 972 F.2d 643, 647 (5th Cir.1992) (holding that background information is not extrinsic evidence where "inextricably intertwined" with the crime charged), *cert. denied,* —— U.S. ——, 113 S.Ct. 1258, 122 L.Ed.2d 655, (1993); *Lokey,* 945 F.2d at 834 ("Such evidence [i.e., beyond scope of indictment] was not extrinsic to the conspiracy charged, because it was relevant to establish how the conspiracy came about, how it was structured, and how each appellant became a member."). Because the testimony of

financial planners and depositors was not extrinsic act evidence, Stouffer's proposed limiting instruction was an incorrect statement of the law. Accordingly, the district court did not abuse its discretion by refusing to give a limiting instruction as to the testimony's proper use. *See United States v. Miller,* 799 F.2d 985, 991 (5th Cir.1986) (finding no reversible error in refusal to give limiting instruction as to proper use of evidence, where requested limiting instruction was an incorrect statement of law).

### E

The remaining issues before us involve the defendants' sentences. Stouffer and Atchley contend, either separately or jointly, that the district court: (1) erred in failing to resolve a disputed issue of fact, in accordance with Fed.R.Crim.P. 32(c)(3)(D); (2) erred in assessing a four-level increase to their base offense levels; (3) abused its discretion by departing upward from the guidelines; and (4) abused its discretion by ordering restitution in the amount of $7.5 million.

### (1)

■■■ Stouffer and Atchley first contend that the district court erred in failing to comply with Rule 32 of the Federal Rules of Criminal Procedure. Rule 32(c)(3)(D) requires courts to "resolve specifically disputed issues of fact if it intends to use those facts as a basis for its sentence." *United States v. Rodriguez,* 897 F.2d 1324, 1327 (5th Cir.), *cert. denied,* 498 U.S. 857, 111 S.Ct. 158, 112 L.Ed.2d 124 (1990); *see* Fed.R.Crim.P. 32(c)(3)(D).

■■■ Before sentencing, Stouffer and Atchley specifically objected to the amount of loss—in excess of $11 million—listed in their respective Presentence Re-

---

11. The court instructed the jury as follows: Each of the offenses charged in the Indictment requires the Government to prove that the defendant, or each defendant acted knowingly, willfully, and with fraudulent intent.... To act with intent to defraud means to act knowingly and with the specific intent to deceive or cheat, ordinarily for the purpose of causing some financial loss to another, or bringing about a financial gain to one's

self.... You are further instructed that the good faith of a defendant is a complete defense to the charges alleged in the Indictment. This is true because good faith on the part of a defendant is simply inconsistent with the intent to defraud or the intent to obtain money or property by means of false or fraudulent pretense, representations, or promises alleged in those charges.
Record on Appeal, vol. 29, at 3087–89.

ports ("PSRs"). *See* Record on Appeal, vol. 2, at 841–43, 851. Based on this figure, Stouffer and Atchley's probation officers recommended that the court increase their base offense levels by 11. *See* PSR for Stouffer at 11 (citing United States Sentencing Commission, *Guidelines Manual*, § 2F1.1(b)(1)(L) (Nov. 1987) (specifying that any loss over $5 million increases the base offense level by 11)); [12] PSR for Atchley at 13 (same). The district court overruled Stouffer and Atchley's objections to the amount of loss without specifically stating the exact loss figure it was using for the purpose of sentencing. However, we find no reversible error. The court need not have specified the exact amount of loss; it was sufficient that the court overruled Stouffer and Atchley's objections, stating that under any scenario, "the dollar loss would exceed $5.9 million ... [and therefore] the offense level would be the same [even if the loss exceeded $11 million]." *See* Record on Appeal, vol. 8, at 19; *United States v. Puma*, 937 F.2d 151, 155 (5th Cir.1991) (holding that trial court's express rejection of defendant's challenge to PSR satisfied Rule 32(c)(3)(D)), *cert. denied,* — U.S. —, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992). Accordingly, we conclude that the district court satisfied Rule 32(c)(3)(D).[13]

### (2)

■ Stouffer and Atchley both contend that the district court erred in finding that the scheme to defraud was extensive, as defined in U.S.S.G. § 3B1.1 (Nov. 1990). Under the guidelines, a defendant's base offense level is increased by four levels "if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). In adopting the PSRs' recommendations, the district court found that FUTCO's scheme to defraud was extensive.[14] *See* Record on Appeal, vol. 8, at 23; *id.,* vol. 9, at 29. We review the district court's factual findings under § 3B1.1 for clear error. *Rodriguez*, 897 F.2d at 1325.

■ The district court's finding was not clearly erroneous, in light of the number of investors (over 2,000) and amount of money (at least $11 million) involved in FUTCO's scheme to defraud. *See* U.S.S.G. § 3B1.1, comment. (n. 2) ("In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered."); *United States v. Allibhai*, 939 F.2d 244, 252–53 (5th Cir.1991) (upholding district court's finding that money-laundering scheme was extensive where scheme involved over one million dollars), *cert. denied,* — U.S. —, 112 S.Ct. 967, 117 L.Ed.2d 133 (1992). Accordingly, the district court did not err in applying § 3B1.1's enhancement provision.

### (3)

■ Atchley also argues that the district court abused its discretion by departing upward from the sentencing guidelines.[15] *See* Brief for Atchley at 39–43; *United States v. Roberson*, 872 F.2d 597, 601 (5th Cir.) ("The court's discretion to depart from the Guidelines is broad."), *cert. denied,* 493 U.S. 861, 110 S.Ct. 175, 107

---

**12.** The probation officers applied the version of section 2F1.1 in effect at the time of the offenses, rather than at the time of sentencing, due to an ex post facto problem. *See* U.S.S.G. § 1B1.11(b)(1); U.S.S.G. § 2F1.1(b)(1)(O) (Nov. 1990) (specifying that a loss over $5 million increases the base offense level by 14, rather than 11).

**13.** Stouffer further maintains that the district court erred in holding him responsible for losses caused by his co-defendants without expressly finding that his co-defendants' conduct was reasonably foreseeable to him. Because Stouffer was convicted of aiding and abetting the scheme to defraud FUTCO investors, we find this argument without merit. *See United States v. Lghodaro*, 967 F.2d 1028, 1030 (5th Cir.1992) (rejecting same argument on similar facts because defendants aided and abetted each other in furtherance of the fraudulent conduct).

**14.** Stouffer and Atchley do not dispute that they were organizers or leaders of the scheme to defraud. *See* Brief for Stouffer at 44–46; Brief for Atchley at 36–39.

**15.** The district court departed upward from a sentence of 37 to 46 months on all counts, to a term of 60 months on all counts, such terms to run concurrently. *See* Record on Appeal, vol. 8, at 49.

**928**

L.Ed.2d 131 (1989). A departure from the guidelines will be upheld if: (1) the district court provided acceptable reasons for the departure; and (2) the departure was reasonable. *United States v. Lambert*, 984 F.2d 658, 660 (5th Cir.1993). A district court may depart from the guidelines where it finds "an aggravating or mitigating circumstance ... not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b) (1988).

 Atchley contends that the district court's reasons for departure were adequately taken into consideration by the guidelines.[16] We disagree. As it existed in 1987, section 2F1.1 only considered the amount of loss and certain other non-relevant factors when determining a defendant's base offense level. *See id.* Section 2F1.1 did not consider the factors cited by the district court, particularly that FUTCO's scheme to defraud caused thousands of investors to lose their life savings. *See id.* comment. (n. 9) (acknowledging that an upward departure may be warranted for a fraud crime where the "[d]ollar loss ... does not fully capture the harmfulness and seriousness of the conduct."). Because we find the district court's reasons for upward departure adequate, and not previously considered by the guidelines, we conclude that the district court did not abuse its discretion.

(4)

 Lastly, Stouffer and Atchley both contend that the district court erred in ordering restitution in the amount of $7.5 million, the entire amount allegedly lost by investors as the result of their scheme to defraud. *See* Brief for Stouffer at 46–49; Brief for Atchley at 43–44. Because Stouf-

fer and Atchley challenge the legality of the award under the Victim and Witness Protection Act of 1982 ("VWPA"),[17] we review the award de novo. *United States v. Chaney*, 964 F.2d 437, 451 (5th Cir.1992).

 Restitution under the VWPA is limited to losses caused by the specific conduct underlying the offense of conviction. *Hughey v. United States*, 495 U.S. 411, 414, 110 S.Ct. 1979, 1982, 109 L.Ed.2d 408 (1990). Stouffer and Atchley argue that *Hughey* prohibited the district court from ordering restitution for all the losses caused by their scheme to defraud. We disagree. To convict Stouffer and Atchley of 'mail and wire fraud, the government had to prove a scheme to defraud, rather than just specific incidents of fraud limited to individual investors. *See* 18 U.S.C. §§ 1341, 1343; Black's Law Dictionary 1344 (6th ed. 1990) (defining "scheme" to mean "a plan or pattern of conduct"). Because a fraudulent scheme is an element of their offenses of mail and wire fraud, actions pursuant to that scheme are "conduct underlying the offense of conviction." *United States v. Brothers*, 955 F.2d 493, 497 (7th Cir.) (affirming restitution order because " '[p]roof of a scheme to defraud is an element of the offense of mail fraud, and therefore, actions pursuant to that scheme should be considered "conduct that is the basis of the offense of conviction." ' " (quoting *United States v. Bennett*, 943 F.2d 738, 740 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992))), *cert. denied*, —— U.S. ——, 113 S.Ct. 142, 121 L.Ed.2d 94 (1992); *see also Chaney*, 964 F.2d at 453 (citing with approval the rationale of *Brothers* and *Bennett*, as applied to a restitution order for all the losses caused by a defendant's conspiracy). Moreover, because the scheme to defraud was specifically defined

---

16. The district court justified upward departure because of the "devastating impact" Atchley—as the CEO of an investment trust company—had upon investors, many of whom lost their life savings. *See* Record on Appeal, vol. 8, at 48. The court also cited the scope of the scheme to defraud as a reason for departure. *See id.* Atchley does not dispute that these factors constituted aggravating circumstances. *See* Brief for Atchley at 39–43.

17. The district court adopted the recommendations, contained in Stouffer and Atchley's PSRs, that they make restitution under the VWPA. *See* PSR for Stouffer at 16; PSR for Atchley at 19. The restitution provisions of the VWPA authorize federal courts, when sentencing defendants convicted of certain offenses, to order that the "defendant make restitution to any victim of such offense." 18 U.S.C. § 3579(a)(1) (1982 ed., Supp. IV).

in the indictment—i.e., the indictment described in detail the duration of Stouffer and Atchley's scheme and the methods used—we find that the district court's inclusion of all losses caused by the scheme to defraud satisfied *Hughey's* requirement that sentencing courts focus upon only the *specific* conduct underlying the offense of conviction. *See Brothers*, 955 F.2d at 497 (affirming restitution order where indictment specifically defined exact period of violations and methods used).

We note that our holding today conflicts with the decisions of some of our sister Circuits. *See, e.g., United States v. Sharp*, 941 F.2d 811, 815 (9th Cir.1991) (arguing that the presence of a scheme is "too fine a point on which to distinguish *Hughey*"); *United States v. Jewett*, 978 F.2d 248, 251 (6th Cir.1992) (adopting *Sharp*); *United States v. Stone*, 948 F.2d 700, 703 (11th Cir.1991) (same). We find those decisions unpersuasive, however, because they unjustifiably expand *Hughey's* holding—that the VWPA prohibits restitution for the loss caused by an offense for which the defendant was not convicted—by limiting restitution to the loss caused by the particular acts described in the counts of conviction. *E.g., Jewett*, 978 F.2d at 252. Given the goal behind the VWPA—"to ensure that the Federal Government does all that is possible within limits of available resources to assist victims ... without infringing on the constitutional rights of the defendant" [18]—we cannot adopt such an expansive reading of *Hughey*. *See United States v. Bailey*, 975 F.2d 1028, 1033 (4th Cir.1992) (stating that "*Hughey* should be read narrowly to apply only when the restitution award clearly encompasses ... an offense for which the defendant was not convicted"). Accordingly, we find no reversible error in the district court's award of restitution.[19]

### III

For the foregoing reasons, we AFFIRM.

REAVLEY, Circuit Judge, dissenting in part:

I disagree with the affirmance of the restitution order. I would follow the Sixth and Ninth Circuits in their reading of *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). *United States v. Jewett*, 978 F.2d 248 (6th Cir. 1992); *United States v. Sharp*, 941 F.2d 811 (9th Cir.1991). And I think the court has not answered Atchley's point about his withdrawal from FUTCO. This is not a conspiracy case.

Otherwise, I concur with the opinion.

---

18. *Hughey*, 495 U.S. at 420, 110 S.Ct. at 1985 (quoting 18 U.S.C. § 1512 note (1988)). While ordering a defendant to make restitution for an offense for which he was not convicted certainly raises constitutional due process concerns, *see id.* at 421 n. 5, 110 S.Ct. at 1985 n. 5, the same cannot be said in Stouffer and Atchley's case, where: (a) the government had to prove a scheme; (b) the indictment specifically described the parameters of the scheme; and (c) the jury implicitly found the existence of the scheme, based upon its guilty verdict on all counts of the indictment.

19. Furthermore, although we do not rely upon Congress' 1990 amendment to the VWPA due to ex post facto concerns, *see Jewett*, 978 F.2d at 252–53, we nevertheless recognize that the amendment is consistent with our holding today. The VWPA now provides:

For the purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C.A. § 3663(a)(2) (West Supp.1992).