**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 91-7322
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

EDO-OGOHMWENSEMWEN IUEIORE LGHODARO,

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Texas

(July 24, 1992)

Before KING, EMILIO M. GARZA, and DeMOSS, Circuit Judges.

PER CURIAM:

Edo-Ogohmwensemwen Iueiore Lghodaro ("Lghodaro") pleaded guilty to Count 9 of a twelve-count indictment charging him and his brother, Oronsaye Rowland Lghodaro, with mail fraud and aiding and abetting in violation of 18 U.S.C. § 1341. He was sentenced to 21 months imprisonment, three years supervised release, ordered to make restitution in the amount of $1,757.24 and to pay a fine of $7,316.76.

Between February and November of 1990, Lghodaro and his brother, using variations of Lghodaro's name, applied for and received collision insurance with several different insurance

companies on the same vehicle, a 1986 Peugeot. They filed false collision damage claims on this car with several insurance companies. Lghodaro eventually pleaded guilty to Count 9 of the indictment which charged a false collision claim and insurance payment made by Colonial Penn Insurance Company. Lghodaro applied for and was approved for collision insurance with Colonial Penn for his 1986 Peugeot on April 11, 1990 in the name of Eddie Lhodard. On April 16, he filed a collision damage claim. Prosecution materials reveal that he told Colonial Penn that he had an accident with an unknown vehicle in Dallas when the vehicle attempted to change lanes. He also told them that no police report was filed and there were no witnesses to the accident. Based on this collision damage claim, Colonial Penn mailed to "Ed Lghodard" an insurance draft in the amount of $1,757.24. Lghodaro endorsed and cashed the draft.

Lghodaro claimed the same damage to the Peugeot with several insurance companies. Each claim stated that a police report was not filed and that there were no witnesses to the accident. Investigative material revealed that Lghodaro filed claims totaling approximately $35,385.13. He received insurance settlement payments totaling $9,074.45. Investigative material also revealed that his brother filed claims totaling approximately $23,430.94 and received payments of $17,889.67. Altogether, Lghodaro and his brother filed false claims with insurance companies totaling $58,816.07, netting $26,964.12 in payments.

ISSUE 1:  <u>Amount of loss - conduct attributable to Lghodaro</u>

Lghodaro argues on appeal that the district court erred by increasing his offense level five points based on a loss of $58,816.07. He argues that the amounts attributable to his brother should not have been attributed to him to determine the loss. He contends that there was no evidence to show that the amounts of the false claims made by his brother were reasonably foreseeable to him.

In its Presentencing Report (PSR), the probation office recommended that five points be added to Lghodaro's base offense level pursuant to U.S.S.G. § 2F1.1(b)(1)(F) because the amount of the loss was $58,816.07. Lghodaro objected to the increase, arguing that he should not be held accountable for the claims filed by his brother and that his offense level should only be increased by two levels. The district court overruled his objection, finding that Lghodaro and his brother were charged jointly with aiding and abetting in a scheme or plan to defraud the insurance companies.

U.S.S.G. § 2F1.1(b)(1)(F) provides that if the loss is more than $40,000 but less than $70,000, the offense level should be increased by five points. Lghodaro filed claims for $35,385.13 and his brother filed claims totaling $23,430.94.

Lghodaro can be held accountable for the amount of the claims filed by his brother if the brother's conduct can be considered "relevant conduct." Relevant conduct is used to determine the base offense level and includes "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission

3

of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense."  U.S.S.G. § 1B1.3(a)(1).  Application Note 1 to this section states that "[i]n the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant `would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant."

The district court found that Lghodaro's brother's conduct was part of the joint scheme or plan which Lghodaro aided and abetted. While the court did not expressly state that it found that the brother's conduct was reasonably foreseeable to Lghodaro, the meaning of the court's finding is clear.

This is exactly the type of factual scenario which the sentencing commission had in mind when defining relevant conduct. Illustration d. to § 1B1.3 describes a situation where two defendants, working together, design and execute a fraudulent scheme.  One defendant fraudulently obtains $20,000 and the other defendant fraudulently obtains $35,000.  Each defendant is accountable for the entire $55,000 because they aided and abetted each other in the fraudulent conduct and because the conduct of each was in furtherance of the jointly undertaken criminal activity and was reasonably foreseeable.  U.S.S.G. § 1B1.3, comment. (n.1 d.).  The district court was not clearly erroneous in finding that

4

Lghodaro was responsible for the entire $58,816.07. See U.S. v. Patterson, ___ F.2d ___ (5th Cir., May 21, 1992, No. 91-1377, slip p. 4865-66) (where two brothers were involved in a conspiracy involving stolen vehicles, defendant could have foreseen that as part of joint enterprise, his brother would obtain other vehicles).

Lghodaro argues that the evidence was not sufficiently reliable to support a finding that his brother's conduct was reasonably foreseeable to him.

The PSR indicated that Lghodaro and his brother were acting together in a scheme to defraud insurance companies. Although the factual resume does not mention any actions taken by his brother, Lghodaro pleaded guilty to Count 9 of the indictment, which charged Lghodaro and his brother with devising a scheme to defraud insurance companies. Count 9 incorporated the allegations of concerted activity between the brothers outlined in the introduction of the indictment.

Although Lghodaro argues that his brother's conduct was not reasonably foreseeable to him, he did not present any facts in the district court to support his argument. He did not even deny knowledge that his brother was filing other claims. His objections were merely in the form of unsworn assertions, which are unreliable and should not be considered. U.S. v. Sanders, 942 F.2d 894, 897-98 (5th Cir. 1991). The PSR is considered reliable and may be considered as evidence by the trial judge in making factual sentencing determinations. Id. The evidence supporting the finding that Lghodaro could reasonably foresee and therefore be

held accountable for his brother's conduct was sufficiently reliable.

ISSUE 2:  Amount of loss - actual or intended loss

Lghodaro also complains that his offense level was determined improperly based on the amount of the claims submitted to the insurance companies instead of the actual amount paid out by the companies.  He argues that his offense level should have been based on the $9,074.45 which he was actually paid by the insurance companies which would have increased his offense level by two points.  Although he did not make this particular argument in the district court, he did argue that his offense level should only be raised by two points, presumably based on the $9,074.45 figure.

The commentary to § 2F1.1 states that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1, comment. (n.7).  Lghodaro seems to argue that intended loss is only to be used if the actual loss is difficult to determine.  The use of intended loss is not so limited by the application note.

In this case, the attempted or intended loss can easily be determined based on the amounts of the false claims filed. Lghodaro intended to cause a loss to the insurance companies in the amount of $58,816.07, the total amount of false claims filed.  The fact that the insurance companies did not pay the entire amount does not change that fact.  The intended loss should be used, not the actual loss.

6

Although this Circuit has not yet addressed this issue, all of the circuits which have discussed application note 7 to § 2F1.1 have reached the same conclusion. See U.S. v. Smith, 951 F.2d 1164, 1166-69 (10th Cir. 1991); U.S. v. Kopp, 951 F.2d 521, 535-36 (3rd Cir. 1991); U.S. v. Lohan, 945 F.2d 1214, 1218-19 (2nd Cir. 1991); U.S. v. Schneider, 930 F.2d 555, 558-59 (7th Cir. 1991); U.S. v. Davis, 922 F.2d 1385, 1391-92 (9th Cir. 1991); U.S. v. Johnson, 908 F.2d 396, 398 (8th Cir. 1990). The district court did not clearly err in using the amount of intended loss rather than the amount actually paid by the insurance companies.

ISSUE 3:  Acceptance of responsibility

Lghodaro argues that the district court erred in failing to grant him a two-level reduction for acceptance of responsibility. He argues that failure to make voluntary restitution is only one factor to be considered in deciding whether a defendant has accepted responsibility, and that this should not otherwise outweigh his acceptance of responsibility for his criminal conduct.

The probation office recommended against the two-level reduction for acceptance of responsibility. The PSR indicates that although Lghodaro admitted his involvement in the offense, he had made no attempt to make restitution. He had $10,065.06 in a bank account which he transferred to an account in another bank in another person's name. He was untruthful to the probation officer about this money and about his prior criminal record. The probation officer concluded that based on his untruthfulness and his failure to pay restitution prior to the adjudication of guilt,

7

he had not clearly demonstrated acceptance of responsibility. PSR, ¶¶ 9-11.  Lghodaro objected to the PSR.  PSR addendum, objections ## 1 and 3.

The district court found that he was not entitled to the two-point reduction just because he pleaded guilty.  The court noted that Lghodaro had made no effort to repay the insurance companies, that he had transferred funds that would have been available to repay them to an account in someone else's name, and that he did not give any assistance to the authorities in the recovery of the money.

The Sentencing Guidelines provide that a two-level reduction is warranted if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct.  The defendant bears the burden of proving that he is entitled to the downward adjustment.  U.S. v. Kinder, 946 F.2d 362, 367 (5th Cir. 1991), cert. denied, 112 S.Ct. 1677 (1992). This Court's review of the district court's ruling is even more deferential than a pure clearly erroneous standard.  Id.

In determining whether a defendant qualifies for the reduction, a court may consider whether the defendant has voluntarily paid restitution prior to adjudication of guilt, whether has been truthful to the authorities, and whether he has voluntarily assisted the authorities in the recovery of the fruits of the offense.  U.S.S.G. § 3E1.1, comment. n.1(b), (c), and (e). The district court examined Lghodaro's conduct in light of these three considerations and found that he had failed to meet his

burden of proving that he had accepted responsibility.  Based on the facts as set forth in the PSR, the district court's finding was not clearly erroneous.

AFFIRMED.