UNITED STATES of America, Plaintiff–Appellee,

v.

**Jodie Timothy PACKER, Defendant–Appellant.**

**Nos. 94–41214, 94–41215 and 94–41216.**

United States Court of Appeals, Fifth Circuit.

Nov. 22, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 3, 1996.

---

Michael P. Gibson, Burleson, Pate & Gibson, LLP, Dallas, TX, for appellant.

Randall L. Fluke, Mike Bradford, U.S. Atty., Sherman, TX, for appellee.

Before POLITZ, Chief Judge, and WISDOM and STEWART, Circuit Judges.

POLITZ, Chief Judge:

Convicted on guilty pleas of multiple counts, Jodie Timothy Packer appeals his convictions, in part, and his sentences. Finding neither error nor abuse of discretion we affirm.

### Background

The relevant scenario began in 1985 when Packer, a successful Dallas businessman, met Joy Aylor. Two years before, Aylor had paid to have the girlfriend of her estranged husband killed. On May 26, 1988 she was arrested for capital murder. When she was released on bail later that day, Packer picked her up and she confessed her complicity in the murder. As the trial drew near Aylor fled first to Canada and then Mexico, where Packer met her. Packer aided in Aylor's flight and avoidance of trial by securing for her a false birth certificate used in obtaining an Oklahoma driver's license and a passport under the assumed name. In the meantime Packer secured a false birth certificate and used it to obtain a Texas driver's license, social security card, and a passport under the assumed name. Packer funded subsequent activities by engaging in several financial transactions.

Packer and Aylor traveled extensively in Europe, ultimately settling in southern

France where Aylor was arrested after an automobile accident. Her identity became known and she was extradited and returned to Dallas County in November 1993.

In the meantime, Packer was indicted in 1991 in the Eastern District of Texas for his involvement in Aylor's flight to avoid prosecution. He was released on bail, liquidated some properties, and fled the country with a large sum of money, using a new alias. He lived for a time on a yacht in the Bahamas. He was the subject of search by several government agencies for about three years before his arrest on May 5, 1994 while attempting to reenter the United States from Mexico.

Packer and the government entered into a plea agreement under which he pled guilty to seven counts of the superseding indictment returned by the grand jury for the Eastern District of Texas, specifically, concealing a person from arrest, conspiracy to commit passport fraud, passport fraud, use of a fraudulent social security number, mail fraud, and failure to appear. Additionally, he pled guilty under Fed.R.Crim.P. 20, to charges in the Southern and Northern Districts of Texas that he structured financial transactions to evade reporting requirements.

In sentencing, the trial judge found Packer to be in criminal history category I and, after grouping the offenses other than the failure to appear count, found a criminal offense level of 16.[1] The resulting guideline sentencing range was 21–27 months for the grouped offenses. In addition the court found an offense level of 12 for the failure to appear charge which resulted in a sentencing range of 10–16 months. The court sentenced Packer to 27 months on the grouped charges, with a consecutive 16–month sentence on the failure to appear charge, and the court imposed a fine.

Packer challenges his conviction on the structuring counts and several aspects of the sentencing.

## ANALYSIS

### Structuring Convictions

Packer maintains that his pleas of guilty to the structuring of financial transaction charges are invalid because the court failed to advise him of an essential element of the offense as required by Fed.R.Crim.P. 11. The government counters that Packer may not raise this issue on appeal because the plea agreement states, in relevant part:

> [T]he Defendant waives the right to appeal any issue, save and except, issues related to the application of the Sentencing Guidelines in sentencing the Defendant or the basis for any upward departure, if any, which the Court might impose in sentencing. Any appeal is limited to those issues identified herein.... The Defendant knowingly waives his right to appeal all issues, save and except, those mentioned above, in exchange for the concessions made by the Government in this agreement.

 A defendant's waiver of the right to appeal is not informed if the defendant does not know the consequences of his decision.[2] Packer clearly knew the consequences of his decision. The language of the agreement leaves no doubt that Packer waived all issues on appeal *except* issues related to sentencing. Further, during the Rule 11 colloquy Packer attested that he understood he had a right to appeal his sentence but that he had waived his "right to appeal any finding of guilt that the Court may make pursuant to [his] pleas of guilty." Finally, there is nothing in the record to indicate that Packer, a college-educated successful businessman, did not understand the consequences of entering into the plea agreement with the government limiting his right to appeal to matters involving the application of the sentencing guidelines or an upward departure.

### Failure to Appear

 The guidelines require grouping of "closely related" offenses [3] and the use of the

---

1. U.S.S.G. §§ 3D1.2, 3D1.3, 3D1.4 (Nov. 1993).

2. *United States v. Baty*, 980 F.2d 977 (5th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 2457, 124 L.Ed.2d 672 (1992).

3. U.S.S.G. § 3D1.2.

individual offense with the highest level as the offense level.[4] The commentary to section 2J1.6 informs that "the failure to appear count and the count(s) for the underlying offense are grouped together under § 3D1.2(c)."[5] From this linchpin Packer maintains that the failure to appear offense should have been grouped with the various underlying offenses. We are not persuaded.

Section 3146(b)(2) of Title 18 of the United States Code requires that "[a] term of imprisonment imposed under this section shall be consecutive to the sentence of imprisonment for any other offense." The guidelines address the apparent conflict between sections 3146 and 2J1.6 by providing that the court, after grouping the failure to appear counts with the underlying counts, should earmark a portion of the total punishment as a consecutive sentence for the failure to appear count.[6]

In *Stinson v. United States*,[7] the Supreme Court held that guideline commentary is authoritative unless it violates the Constitution or an applicable statute. Therefore, if guideline commentary 2J1.6 n. 3 conflicts with statutory section 3146 we must apply the latter.[8] The guideline treatment of section 3146(b)(2) would defeat the statutory intent that a failure to appear offense be considered separate and distinct from the underlying offenses, warranting a separate and distinct penalty. The district court did not err by declining to group the failure to appear count with the other counts and by imposing the failure to appear sentence consecutive to the other sentence.

*Grouping*

■ Section 3D1.2 dictates that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group."[9] Section 3D1.2 identifies four alternative methods to determine what constitutes "substantially the same harm."[10] The district court divided the counts of conviction, other than the failure to appear count, into four groups: (1) social security fraud and mail fraud; (2) passport fraud and conspiracy to commit passport fraud; (3) concealing a person from arrest; and (4) the two structuring counts.

Packer maintains that all of the offenses should have been grouped into one group except the second structuring count which occurred after Aylor's arrest, because all sought a common criminal objective, *i.e.,* preventing the discovery and arrest of Aylor.[11]

Packer did not object to the grouping and we review only for plain error.[12] Packer makes a forceful argument that each of the offenses, except the later structuring count, are connected by a common criminal objective. He overlooks the requirement of section 3D1.2(b) that the counts involve the same victim. Relevant in the case at bar is the alternative for offenses without victims.

---

4. *Id.* at § 3D1.3(a); *United States v. Gallo,* 927 F.2d 815 (5th Cir.1991).

5. U.S.S.G. § 2J1.6 comment. (n. 3).

6. *Id.*

7. 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).

8. *Stinson. See also United States v. Schmeltzer,* 960 F.2d 405, 408 (5th Cir.), *cert. denied,* 506 U.S. 1003, 113 S.Ct. 609, 121 L.Ed.2d 544 (1992) ("All of the United States Courts of Appeal have agreed that statutorily mandated sentences are incorporated into the Sentencing Guidelines and prevail over the guidelines when in apparent conflict."). 18 U.S.C. § 3146 does not mandate a term of imprisonment but rather requires that any term of imprisonment must be imposed consecutively. Packer attaches significance to this distinction. It is a distinction, however, with no relevance to the determination whether section 3146 precludes grouping. Manifestly, a direction that a sentence, if any, must be imposed consecutively is no less binding than a direction that a mandatory sentence must be imposed consecutively.

9. U.S.S.G. § 3D1.2.

10. *Id.* Application note 7 indicates that these methods are alternative and that any one or more may be applied. *Id.* at § 3D1.2 comment. (n. 7).

11. *Id.* at § 3D1.2(b).

12. *United States v. Calverley,* 37 F.3d 160 (5th Cir.) (*en banc*), *cert. denied,* —— U.S. ——, 115

Application note 2 suggests that "the grouping decision for [victimless crimes] must be based primarily upon the nature of the interest invaded by each offense."[13] The district court did not err by determining that different interests were invaded by the conspiracy to commit and substantive passport fraud, the structuring offenses, concealing a person from arrest, and the social security and mail fraud offenses.

*Acceptance of Responsibility*

■ Packer contends that he should have received an additional one point reduction for his acceptance of responsibility. We review for plain error. Section 3E1.1(b) establishes a three part test to determine whether a defendant has earned the additional point[14] to which defendant is entitled if he qualifies.[15] Mindful that the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility" and that the judgment thereon is "entitled to great deference on review," we conclude that the district court did not err by finding that the delay between Packer's re-arrest and his entry of a plea of guilty vitiated the award of the additional reduction in offense level.[16]

*Adjustment for Knowledge of Unlawful Activity*

■ Packer contends that the court improperly applied U.S.S.G. § 2S1.3 to the structuring counts. That section provides for a base offense level of six together with the levels from the table in section 2F1.1 corresponding to the value of the funds.[17] Additionally, this section also provides for an additional two point increase if the defendant knew or believed that the funds were intended to promote unlawful activity.[18] We review this finding of fact for clear error.[19] The pre-sentence report, which may be considered as evidence,[20] provides sufficient support for the conclusion that Packer believed the funds would be utilized to support himself and Aylor.[21] The district court did not err in applying section 2S1.3(b)(1).

*Ineffective Assistance of Counsel*

■ Much of Packer's ineffectiveness argument is mooted by our conclusion that the district court correctly applied the sentencing guidelines. Packer may have a complaint about counsel's alleged failure to advise him of a necessary element of the structuring counts. "[A] claim of ineffective assistance of counsel generally cannot be addressed on direct appeal unless the claim has been presented to the district court; otherwise there is no opportunity for the development of an adequate record on the merits of such a serious allegation."[22] As this issue is raised for the first time on appeal, we may reach it only if the record makes possible a fair evaluation of the merits of the claim.[23] The record before us is not sufficiently developed. This issue must remain for another day.

*Fine*

Packer alleges for the first time on appeal that the fine is excessive. We review for plain error. This contention lacks merit; the

S.Ct. 1266, 131 L.Ed.2d 145 (1995); *United States v. Torrez*, 40 F.3d 84 (5th Cir.1994).

**13.** *Gallo*, 927 F.2d at 824 (citing U.S.S.G. § 3D1.2, Comment. (n. 2)).

**14.** *United States v. Gonzales*, 19 F.3d 982 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 229, 130 L.Ed.2d 154 (1994).

**15.** *United States v. Mills*, 9 F.3d 1132 (5th Cir. 1993).

**16.** U.S.S.G. § 3E1.1(b)(2) & comment. (n. 5).

**17.** *Id.* at § 2S1.3.

**18.** *Id.* at § 2S1.3(b)(1).

**19.** *United States v. Sanders*, 942 F.2d 894 (5th Cir.1991).

**20.** *United States v. Lghodaro*, 967 F.2d 1028 (5th Cir.1992).

**21.** Packer provided no evidence to rebut the presentence report. The court was free to adopt such findings without further inquiry. *United States v. Mir*, 919 F.2d 940 (5th Cir.1990).

**22.** *United States v. Navejar*, 963 F.2d 732, 735 (5th Cir.1992).

**23.** *United States v. Higdon*, 832 F.2d 312 (5th Cir.1987), *cert. denied,* 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988).

guidelines were correctly applied and the fine imposed is within the guideline range.[24]

Aggravating Role

█ Packer contends that the district court should not have increased his offense level under section 3B1.1(c) because the record does not reflect that he organized, led, managed, or supervised Aylor.[25] This is an issue of fact which we must review for clear error.[26]

Application note 4 provides guidance in determining whether Packer's participation amounted to "management" or "supervision" by stating that a factor to consider is "the degree of participation in the planning and organizing of the offense." [27] The record abundantly supports a finding that Packer organized the offenses at issue. He obtained the false documents, rented the villa in which they lived in France, provided the necessary funding, and established a bank account in France.

Substantial Assistance

"The decision whether to grant a § 5K1.1 motion is committed to the discretion of the sentencing court." [28] The district court neither abused its discretion nor erred in refusing a downward departure.

The convictions and sentences are AF-FIRMED.

---

**24.** U.S.S.G. § 5E1.2(c)(4).

**25.** *Id.* at § 3B1.1(c). The district court applied section 3B1.1(c) to the concealing a person from arrest count and the passport counts.

**26.** *United States v. Ronning,* 47 F.3d 710 (5th Cir.1995). The pre-sentence report may be considered as evidence by the judge making the factual finding. *See Mir.* "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." *United States v. Valencia,* 44 F.3d 269, 272 (5th Cir.1995).

**27.** U.S.S.G. § 3B1.1 comment. (n. 4).

**28.** *United States v. Franks,* 46 F.3d 402, 406 (5th Cir.1995).