**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 95-10729
(Summary Calendar)
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OSARO DARLINGTON ASEMOTA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:93-CR-349-G)

_____

October 2, 1996


Before HIGGINBOTHAM, WIENER and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Osaro Darlington Asemota was convicted on pleas of guilty to multiple counts comprising conspiracy to commit fraudulent use of a social security number, fraudulent use of a social security number, aiding and abetting mail fraud, and failure

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

to appear. Asemota appeals the sentence imposed by the district court, alleging an error resulting from "double counting" intended loss and actual loss. Asemota also filed a motion for permission to file a supplemental brief. Finding ambiguity, and therefore potential error, in the use of intended and actual losses in calculating Asemota's sentence under the guidelines, we vacate his sentence and remand for resentencing. We also deny his motion to file a supplemental brief.

I

FACTS AND PROCEEDINGS

After Asemota pleaded guilty to the counts noted above, the district court sentenced Asemota to 40 months' imprisonment on each of the fraud counts, to run concurrently, and six months' imprisonment on the failure-to-appear count, to run consecutively to his sentences on the fraud counts. Following sentencing, Asemota instructed his second appointed counsel to file an appeal, but counsel failed to do so. Asemota then filed a pro se notice of appeal out of time. We remanded the case to the district court for a determination of excusable neglect. The court held an evidentiary hearing, after which the magistrate judge determined that Asemota had shown excusable neglect for the late filing of his notice of appeal.

Asemota next filed a motion to dismiss counsel and for appointment of new counsel for his direct criminal appeal, arguing that then-current counsel had demonstrated a conflict of interest

2

based on his opinion that Asemota's appeal had no merit. Counsel responded by submitting an "Agreed Motion to Withdraw as Counsel" and to permit Asemota to proceed pro se. A judge of this court denied the motions and instructed the parties to proceed in accordance with Anders if counsel was still of the opinion that the appeal was frivolous. In response, counsel filed a motion to withdraw, together with an Anders brief. After Asemota responded to the motion, we denied counsel's motion to withdraw and instructed the parties to brief the issue raised by Asemota, i.e., whether the district court erred in its loss calculation.

II

ANALYSIS

A.  Loss Calculation

Under U.S.S.G. § 2F1.1(b)(1)(I), the probation officer increased Asemota's base offense level eight points based on a loss calculation of $234,773.35. Without specifically addressing Asemota's objections to the PSR, the district court adopted this calculation as its fact finding regarding the loss attributable to Asemota's actions. The resulting sentencing range was 37 to 46 months. The district court expressly chose the highest possible sentence in the guideline range due to the large number of Asemota's offenses and to his failure to appear in court on these charges.

The principal thrust of Asemota's argument is that the district court erred by combining both the actual and intended loss

3

figures to arrive at a "total" loss of $234,773.35. Asemota asserts that the district court double-counted by adding the actual loss and intended loss, which already included the actual loss, to arrive at the total loss figure of $234,773.35. According to Asemota, the district court should have used only his "intended" loss, totaling $126,717.24, as the basis for its loss calculation. Asemota contends that the district court's error produced a sentence higher than was permissible under the Sentencing Guidelines.

In response, the government argues that "Asemota's imprecise objection to the `computation of the dollar value of the actual and intended loss' was insufficient to preserve the error claimed for review that there was `double-counting' in arriving at the $234,773.35 total loss amount." The government contends that, as Asemota failed to object properly, his appellate argument should be reviewed for plain-error. The government also contends that, in calculating the loss attributable to Asemota's actions, the PSR used the term "`intended' loss in the sense of amounts that were attempted to be inflicted but which did not actually cause losses." Thus, insists the government, "the total loss amount of $234,773.35 attributed to Asemota was computed by adding actual losses to (additional) intended or attempted losses." The government concludes that no "double-counting occurred and that the $234,773.35 total loss amount was thus the total `intended loss' (including actual loss) and was properly used, since it was greater

4

than the actual loss."

The argument that we should review the district court's findings for plain error is without merit. Asemota entered objections to the PSR's loss calculation by filing a "Statement on Pre-Sentencing Report" in which he stated that "[d]efendant objects to the government's computation of the dollar value of the actual and intended loss and requests further information to confirm that such losses exceeded $200,000." In addition, Asemota's attorney presented the objection during the sentencing hearing. These objections were sufficient to preserve the error and to call the district court's attention to the claimed error "in such a manner so that the district court may correct itself and thus, obviate the need for [appellate] review." United States v. Krout, 66 F.3d 1420, 1434 (5th Cir. 1995)(internal citation and quotation omitted), cert. denied, 116 S. Ct. 963 (1996).

"Review of sentences imposed under the guidelines is limited to a determination whether the sentence was imposed in violation of law, as a result of an incorrect application of the sentencing guidelines, or was outside of the applicable guideline range and was unreasonable." United States v. Matovsky, 935 F.2d 719, 721 (5th Cir. 1991). Legal conclusions by the district court are reviewed de novo and findings of fact are reviewed for clear error. United States v. Fitzhugh, 984 F.2d 143, 146 (5th Cir.), cert. denied, 510 U.S. 895 (1993). The calculation of the amount of loss is a factual finding that this court reviews for clear error.

5

United States v. Wimbish, 980 F.2d 312, 313 (5th Cir. 1992), cert. denied, 508 U.S. 919 (1993).

The guideline applicable to cases involving fraud and deceit is § 2F1.1. Under § 2F1.1(a), the base offense level for mail fraud is six. This section provides for an incremental increase in the base offense level if the loss suffered by the victims of the fraud was over $2,000. § 2F1.1(b)(1). Eight points are added to the base level of six if the loss exceeds $200,000 but is less than $350,000. § 2F1.1(b)(1)(I). In calculating the loss attributable to a defendant in a fraud case, the district court should use the greater of the actual loss caused by the defendant's actions or "the intended loss that the defendant was attempting to inflict," if that can be determined. § 2F1.1, comment. (n.7).

In a case that involved a similar insurance fraud scheme, we held that the intended loss, constituting the face amount of the false claims submitted to the insurance companies, is to be used as the loss calculation for sentencing purposes. United States v. Lghodaro, 967 F.2d 1028, 1031 (5th Cir. 1992). We reasoned that the fact that the insurance companies did not pay the entire amount did not change the fact that the defendant intended to cause a loss equal to the amount of false claims submitted. Id. In similar fraudulent schemes, we have held that the amount of intended loss is the potential amount to be gained from the fraudulent behavior, whether realized or not. See e.g., United States v. Hill, 42 F.3d 914, 919 (5th Cir.), cert. denied, 116 S. Ct. 130, 133 (1995)(face

6

amount of securities fraudulently represented as "owned"); <u>Wimbish</u>, 980 F. 2d at 316 (face value of stolen checks deposited rather than amount actually received).

Here, the PSR attributed the actual and intended losses caused by Abudu to Asemota because Abudu acted under Asemota's control. There is, however, ambiguity in the PSR's calculation of losses attributable to Asemota's and Abudu's actions. In its assessment of the loss attributable to Asemota, the PSR states,

> Asemota submitted a total of 38 fraudulent insurance claims, resulting in an intended loss of $95,470.56 and an actual loss of $74,934.79. . . . As a result of Abudu's fraudulent claims, the insurance companies sustained an actual loss of $33,121.32 plus an intended loss of $31,246.68. Specifically, Asemota's and Abud[u]'s fraud, including actual and intended loss, totals $234,773.35.

The PSR later states that "the actual loss and intended loss in this case totals $234,773.35."

This is ambiguous. It is unclear whether the actual loss suffered by the insurance companies is included in the intended-loss figure, for the PSR provides support only for the $74,934.79 actual-loss total. These statements could also be interpreted to conclude or indicate that the preparer of the PSR subtracted the actual losses incurred ($74,934.79 + $33,121.32) from the face amount of the fraudulent claims submitted ($234,773.35) to arrive at an "intended" loss ($95,470.56 + $31,246.68). Yet the PSR provides neither an indication that this calculation method was used nor any other support for this interpretation.

7

If the district court included the actual loss in the intended-loss total, it double-counted the actual loss by adding the two figures together to arrive at the "total" loss of $234,773.35. If that is what happened, the district court also misapplied § 2F1.1 by adding the two figures instead of using the greater of (1) the intended loss (fraudulent claims submitted), or (2) the actual loss, as the loss to be used for sentence calculation purposes. See Lqhodaro, 967 F.2d at 1031; § 2F1.1 comment. (n.7). It seems clear to us that, if the district court had used the greater of the two figures, the loss calculation would not have exceeded $200,000. Under a plain reading of the PSR, the district court should have used the intended loss total of $126,717.24,[1] as it was greater than the actual loss total of $108,056.11.[2] See Lqhodaro, 967 F.2d at 1031; § 2F1.1 comment. (n.7). Consequently, if such loss calculation was used, Asemota's sentencing range, with all other factors remaining the same, would have been 33 to 41 months.

The government's argument that the total loss of $234,773.35 was the "total intended loss (including actual loss) and was properly used," fails under Lqhodaro. This argument suggests double-counting. The district court must use the face amount of

---

[1] Asemota's intended loss was $95,470.56. Abudu's attributable intended loss was $31,246.68.

[2] The actual loss attributable to Asemota was $74,934.79; the actual loss attributable to Abudu was $33,121.32.

8

the claims submitted as the "loss" used for sentencing purposes. See Lghodora, 967 F.2d at 1031. If the government's argument is construed to mean that the loss-calculation total used by the PSR was, in fact, the face amount of the fraud claims submitted (as the sum of intended loss and the actual loss), the PSR provides no basis from which the court could draw that conclusion.

We are therefore constrained to conclude that resentencing is required. The district court's loss calculation, used as a basis for Asemota's sentence, is at best ambiguous. If the "intended" loss actually includes the "actual" loss, the court indeed double-counted the actual loss. In the alternative, the district court erred in assessing the loss attributable to Asemota's actions under § 2F1.1 by adding the intended loss and actual loss instead of using the greater of the two figures. If the district court did follow Lghodora and sentenced Asemota based on the amount of the fraudulent claims he submitted to the insurance companies, it provides no basis for such a finding. Because, under a plain reading of the PSR and application of § 2F1.1 to the totals provided therein, Asemota's resultant sentencing range would have been lower than the sentence he received, the district court was clearly erroneous.

Accordingly, we have no choice but to vacate Asemota's sentence and remand the case for resentencing. The new sentencing must be based on a new PSR, one which follows Lghodaro's directive and explains the basis for its actual and intended loss

9

calculations. If the current sentence was correctly based on the amount of fraudulent claims submitted to the insurance companies, the district court should articulate clear support for such a loss-calculation finding.

B.   Motion to File Supplemental Brief

Asemota filed a motion for leave to file a supplemental brief to address whether the district court violated his double jeopardy rights by imposing a $50 special assessment on each count of conviction, and also to challenge the district court's failure to reduce his base offense level for acceptance of responsibility. Asemota's counsel filed the motion at the direction of Asemota although counsel believed the issues to be of no merit. That motion is denied. Asemota did not raise either issue in the district court, and they were not addressed by Asemota's counsel in the appellate brief. Therefore, there is no argument to supplement, and we would be reviewing the alleged errors raised in the supplemental brief for the first time on appeal.

Sentence VACATED and REMANDED; motion DENIED.