[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13370
_____

D.C. Docket No. 0:11-cr-60056-KMM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JONATHAN ALONSO VASQUEZ,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 14, 2012)

Before CARNES, BARKETT and HILL, Circuit Judges.

PER CURIAM:

Jonathan Vasquez appeals his 121-month prison sentence for his

convictions of one count of conspiracy to import heroin and one count of conspiracy to possess with intent to distribute heroin.  He contends that the district court miscalculated his guidelines range.

I.

Kevyn Castaneda asked Vasquez to help him smuggle heroin from Colombia into the United States, and Vasquez agreed.  Vasquez then wired his own money to the heroin source, and he recruited David Sella and Cameron Wornick to take a round-trip cruise with Castaneda to Colombia to pick up the heroin and smuggle it into the United States.  Castaneda, Sella, and Wornick took the cruise, and Vasquez was supposed to pick them up after the cruise ship returned to the United States.  But when the ship arrived at a Florida port, law enforcement officers arrested Vasquez's co-conspirators and found the heroin. Sella and Wornick agreed to cooperate with the arresting officers, and they told the officers that they were supposed to call Vasquez once the ship arrived at port. An officer then directed Sella to call Vasquez and get instructions about what to do with the heroin.  An unidentified co-conspirator, acting at Vasquez's direction, told Sella that he and Wornick should take a taxi to a nearby fast-food restaurant. Officers escorted Sella and Wornick to that restaurant in an undercover taxi, and once there, the officers arrested Vasquez.

2

A federal grand jury indicted Vasquez on one count of conspiracy to import heroin into the United States in violation of 21 U.S.C. § 952(a) and § 963, and one count of conspiracy to possess heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), and § 846.[1]  Vasquez pleaded guilty to both counts without a plea agreement.  The presentence investigation report recommended a base offense level of 32 under United States Sentencing Guidelines § 2D1.1(c)(4) (Nov. 2010).  It added 3 levels under U.S.S.G. § 3B1.1(b) because Vasquez was a "manager or supervisor" of the drug-smuggling conspiracy and the conspiracy involved more than five participants (Vasquez, Castaneda, Sella, Wornick, and unindicted co-conspirators).  It then subtracted 3 levels under U.S.S.G. § 3E1.1 for acceptance of responsibility, which resulted in a total offense level of 32.  The PSR determined that Vasquez had a criminal history category of I.  The result was a recommended guidelines range of 121 to 151 months in prison.

Vasquez objected to the manager-or-supervisor enhancement, contending that the evidence did not support a finding that he was a manager or supervisor of the conspiracy.  The probation officer responded to Vasquez's objection by

---

[1] The grand jury also indicted Castaneda, Sella, and Wornick on the two conspiracy counts and on another count that applied only to those three:  possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i).  Castaneda, Sella, and Wornick pleaded guilty to the conspiracy to possess count; the district court dismissed the other two counts; and the court sentenced them to 135, 46, and 46 months in prison, respectively.

contending that the enhancement was proper for two reasons: (1) Vasquez gave "Sella and Wornick instructions once they arrive[d] at Port" that "direct[ed them] as to what to do and where to go in order for him to obtain the heroin," and (2) Vasquez assisted "the 'head guy' by providing money for the purchase [of the heroin]."

Vasquez responded that his instructions to Sella and Wornick once they arrived at port were not evidence that he was a manager or supervisor of the conspiracy, arguing that he provided those instructions only because Sella had called him three hours late. According to Vasquez, "[h]e felt like something was wrong and didn't want to go to the port. So the original plan was he would pick them up there once they called but they never called."

The district court overruled Vasquez's objection, "adopt[ing] the probation officer's response to the objection as the court's finding as to [Vasquez's] role in the activity." The court then sentenced Vasquez to 121 months in prison on each count, with each sentence to run concurrently, followed by 5 years of supervised release.

## II.

Vasquez contends that the district court erred by finding that he was a manager or supervisor of the drug-smuggling conspiracy for two reasons: (1) the

4

court improperly based its finding that he was a manager or supervisor on evidence that he gave instructions to Sella and Wornick after they began cooperating with the government, and (2) the other evidence in the record does not support the manager-or-supervisor enhancement. We review for clear error a district court's finding that a defendant was a manager or supervisor. See United States v. Njau, 386 F.3d 1039, 1041 (11th Cir. 2004). "A factual finding is clearly erroneous when . . . the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." United States v. Gupta, 572 F.3d 878, 887 (11th Cir. 2009) (quotation marks omitted). But we review only for plain error arguments that are raised for the first time on appeal in a criminal case. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005).

The guidelines provide for a 3-level increase in a defendant's offense level "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b).[2] To qualify for the manager-or-supervisor enhancement, "the defendant [must have] asserted control or influence over at least one other participant in the crime." United States v. Campa, 529 F.3d 980,

---

[2] "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," the guidelines provide for a 4-level increase. U.S.S.G. § 3B1.1(a).

5

1013 (11th Cir. 2008) (quotation marks omitted); accord U.S.S.G. § 3B1.1 cmt. n.2. ("To qualify for an [enhancement] under this section, the defendant must have been the . . . manager[] or supervisor of one or more other participants."). The commentary defines "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant." U.S.S.G. § 3B1.1 cmt. n.1.

Vasquez argues that the district court erred because it based its finding that he was a manager or supervisor on evidence that he gave instructions to Sella and Wornick after they began cooperating with the government. As government cooperators, Vasquez argues, Sella and Wornick were no longer "participants" in the crime, so his instructions to them are not evidence that he "asserted control or influence over at least one other participant in the crime." Campa, 529 F.3d at 1013 (quotation marks omitted). Although Vasquez objected to the manager-or-supervisor enhancement in the district court, he did not make the argument about Sella and Wornick not being "participants" in the conspiracy when he gave them instructions. For that reason, we review only for plain error whether the district court erred in considering Vasquez's conduct once Sella and Wornick began cooperating with the government. See Rodriguez, 398 F.3d at 1298; United States

6

v. Massey, 443 F.3d 814, 819 (11th Cir. 2006) ("The defendant . . . fails to preserve a legal issue for appeal if the factual predicates of an objection are included in the sentencing record, but were presented to the district court under a different legal theory."); United States v. Maurice, 69 F.3d 1553, 1557–58 (11th Cir. 1995) ("The general rule that an appellate court will not hear arguments advanced for the first time on appeal applies to sentencing proceedings. . . .  [If] a party is silent or fails to state the grounds for objections, the objections are waived." (citations, emphasis, and quotation marks omitted)); id. ("On this appeal Maurice makes three arguments in support of his objection; . . . . [Maurice] waived [two of] these arguments by not presenting them at the sentencing hearing and we will only consider them under a plain error standard."); cf. United States v. Emmanuel, 565 F.3d 1324, 1333 (11th Cir. 2009) ("At trial, Emmanuel made a hearsay objection to the evidence, but did not mention the Confrontation Clause. A hearsay objection to testimony at trial, standing alone, does not preserve a constitutional challenge under the Confrontation Clause for appeal." (quotation marks omitted)); United States v. Deverso, 518 F.3d 1250, 1255 (11th Cir. 2008) ("This trial objection is different [from] the objections Deverso proffers on appeal. Consequently, to obtain relief, Deverso must demonstrate plain error warranting relief.").

Under plain error review, "an appellate court may not correct an error the defendant failed to raise in the district court unless there is:  (1) error, (2) that is plain, and (3) that affects substantial rights." Rodriguez, 398 F.3d at 1298.  An error affects substantial rights if it creates a "reasonable probability of a different result" in the district court proceedings that is "sufficient to undermine confidence in the [actual] outcome." Id. at 1299 (quotation marks omitted).  "In regard to this third prong, it is the defendant rather than the government who bears the burden of persuasion with respect to prejudice." Id. (quotation marks omitted).  If "we would have to speculate" about "the effect of an error on the result in the district court," the defendant has not met his burden. Id. at 1301.  "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if . . . the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1298 (quotations marks omitted).

The government concedes that the district court erred in considering "Vasquez's conduct once Sella and Wornick became cooperators," Appellee Br. 14, and we will assume that concession is correct.  We will also assume that the court's error was "plain," which is the second requirement of the plain error test. See Rodriguez, 398 F.3d at 1298.  Those assumptions are not enough, however, because Vasquez cannot meet the third requirement of the test, which is that he

8

show that the district court's alleged error prejudiced him—that it created a reasonable probability of a different result. See id. at 1299. One reason that he cannot show that is because the court also based the manager-or-supervisor enhancement on the undisputed fact that Vasquez provided the money with which the conspirators bought the heroin. We have held that "provid[ing] funding for [a] criminal endeavor" supports a § 3B1.1 enhancement. United States v. Ramsdale, 61 F.3d 825, 830 (11th Cir. 1995); cf. United States v. Packer, 70 F.3d 357, 362 (5th Cir. 1995) (holding that "provid[ing] the necessary funding" for criminal activity supports a § 3B1.1 enhancement).

Another reason Vasquez cannot show that the assumed error prejudiced him is that other evidence supports the finding that he was a manager or supervisor of the conspiracy. In the district court, Vasquez did not object to the PSR's statement that he "recruited Wornick and Sella" into the conspiracy. Although the district court did not explicitly find that Vasquez recruited two of his co-conspirators, "[i]t is the law of this circuit that a failure to object to allegations of fact in a [PSR] admits those facts for sentencing purposes." United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006). And we have held many times that a defendant's recruitment of co-conspirators supports a § 3B1.1 enhancement. See, e.g., United States v. Thomas, 446 F.3d 1348, 1355 n.2 (11th Cir. 2006) (holding that the

9

district court did not clearly err in finding that the defendant was an "organizer or leader" under § 3B1.1(a) in part because he recruited co-conspirators); United States v. Ndiaye, 434 F.3d 1270, 1304 (11th Cir. 2006) (holding that the district court did not clearly err in finding that the defendant was an "organizer or leader" under § 3B1.1(a) because the defendant "recruit[ed] and instruct[ed] co-conspirators"); United States v. Njau, 386 F.3d 1039, 1041 (11th Cir. 2004) (per curiam) (holding that the district court did not clearly err in finding that the defendant was a "manager or supervisor" under § 3B1.1(b) in part because he "recruited" accomplices); United States v. Perry, 340 F.3d 1216, 1217–18 (11th Cir. 2003) (per curiam) (holding that the district court did not clearly err in finding that the defendant was an "organizer, leader, manager, or supervisor" under § 3B1.1(c) in part because the defendant "actively recruited two individuals to transport drugs"); cf. U.S.S.G. § 3B1.1 cmt. n.4 ("In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as 'kingpin' or 'boss' are not controlling. Factors the court should consider include . . . the recruitment of accomplices . . . .").

In light of Vasquez's undisputed role in funding the conspiracy and recruiting two of the co-conspirators, there is an abundant basis for the manager-or-supervisor enhancement even without considering anything that he did after

10

Sella and Wornick began cooperating with the government.  As a result, we do not know and cannot know that the district court would not have applied the enhancement if it had not considered that later conduct.  The most we can do is speculate that but for the assumed error the court might not have applied the enhancement, even though there are two other perfectly valid and sufficient bases for doing so.

Speculation is not enough to satisfy the prejudice requirement for finding plain error.  Rodriguez, 398 F.3d at 1299–300; see also id. at 1301 ("[W]here the effect of an error on the result in the district court is uncertain or indeterminate— where we would have to speculate—the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error; he has not met his burden of showing prejudice; he has not met his burden of showing that his substantial rights have been affected.").  We have held that "if it is uncertain whether the error affected the result, if the effect is indeterminate, if we simply cannot tell from the appellate record, then the defendant loses." Id. at 1306.  At best for Vasquez, that is the situation here, but that best is not good enough.  See United States v. Pantle, 637 F.3d 1172, 1177 (11th Cir. 2011) (per curiam) ("A defendant's burden under the plain error standard to show prejudice is anything but easy—the burden truly is on the

11

defendant to show that the error actually did make a difference." (quotation marks omitted)).

   **AFFIRMED.**