# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 18, 2023

Lyle W. Cayce
Clerk

_____

No. 22-50398

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Andrea Arroyos,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:21-CR-146-5

_____

Before Wiener, Graves, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Members of a conspiracy may be held accountable for the actions of their co-conspirators. Andrea Arroyos is no different. After she confessed to dealing methamphetamine, the district court sentenced her based on the total quantity of methamphetamine in the conspiracy. Although some should have been excluded, the error was harmless. So we will AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

## I.

Police caught Arroyos selling methamphetamine in a hotel room. She immediately confessed to dealing two ounces of methamphetamine with a co-conspirator and discarding another ounce when she heard officers arrive. Her co-conspirator, she said, had been getting the methamphetamine from "another room" in the hotel. In two other rooms, officers found 1.8 kilograms of methamphetamine.

As it turned out, a suspected drug trafficker had rented all three rooms. Later searches of the trafficker's home turned up nine more ounces of methamphetamine. A federal grand jury then indicted Arroyos, the trafficker, and several other co-conspirators.

Arroyos pleaded guilty to one count of conspiring to distribute at least 50 grams or more of methamphetamine. 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. The presentence report ("PSR"), however, held her responsible for 2.14 kilograms, the total quantity of methamphetamine in the conspiracy. Over her objection, the district court accepted this recommendation and sentenced Arroyos to 189 months of imprisonment.

## II.

On appeal, Arroyos challenges the district court's drug-quantity determination. To hold her liable for the drugs distributed by her co-conspirators, the district court needed to conclude that the drugs were:

1). "within the scope of the jointly undertaken criminal activity";

2). "in furtherance of" it; and

3). "reasonably foreseeable."

U.S.S.G. § 1B1.3(a)(1)(B); *see United States v. Johnson*, 14 F.4th 342, 345 (5th Cir. 2021), *cert denied*, 142 S. Ct. 928 (2022).

No. 22-50398

## A.

Arroyos first claims that the district court never made these findings. But it did. At sentencing, the district court adopted the PSR and its addendum, which makes all three findings. *See United States v. Barnes*, 979 F.3d 283, 313 (5th Cir. 2020). And they provide clear reasons why: Arroyos's confession, the conspiracy, and the relationship between the trafficker and the drugs. We have allowed district courts to "make implicit findings by adopting the PSR" so long as the "findings . . . are so clear" that we are "not left to second[-]guess the basis for the sentencing decision." *United States v. Horton*, 993 F.3d 370, 375 (5th Cir. 2021) (citation omitted); *see United States v. Lghodaro*, 967 F.2d 1028, 1030 (5th Cir. 1992). That is what happened here.

Plus, Arroyos never contested these facts. So the district court properly adopted them. *See Lghodaro*, 967 F.2d at 1030.

## B.

Arroyos next argues that the evidence did not support the district court's drug-quantity determination. Although she accepted responsibility for three ounces of methamphetamine, the district court increased this sum in two ways. First, the court added the 1.8 kilograms found in the hotel. Then, it added the nine ounces discovered in the trafficker's home. Reviewing for clear error, *see United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008), we hold that Arroyos was accountable for only the methamphetamine in the hotel.

The district court properly held Arroyos responsible for the 1.8 kilograms of methamphetamine in the hotel. That finding is amply supported by the record. Arroyos agreed to sell methamphetamine at the hotel with a co-conspirator—a jointly undertaken criminal activity that she furthered. And there was reason to believe the undertaking included the other

methamphetamine in the hotel.    After all, Arroyos knew that the methamphetamine she was selling was from other rooms, and that there was more.  Although she may not have foreseen the exact quantity, "[r]easonable foreseeability does not require proof of knowledge of specific quantities" so long as she had an "obvious understanding of the general breadth of the drug enterprise."  *United States v. Fernandez*, 559 F.3d 303, 323 (5th Cir. 2009) (citation omitted).  On this record, it is conceivable that Arroyos had such an understanding.

The same cannot be said for the methamphetamine in the trafficker's home.  Nothing in the record indicates Arroyos also agreed to sell the remaining nine ounces.  Nor can we infer so from her confession.  *See United States v. Smith*, 13 F.3d 860, 867–68 (5th Cir. 1994) (agreeing to "assist a drug dealer in one transaction" does not automatically mean a defendant is "responsible for all the drugs sold or possessed by that dealer.").  Indeed, the guidelines' commentary confirms this point:

> Defendant R recruits Defendant S to distribute 500 grams of cocaine.  Defendant S knows that Defendant R is the prime figure in a conspiracy involved in importing much larger quantities of cocaine.  As long as Defendant S's agreement and conduct is limited to the distribution of the 500 grams, Defendant S is accountable only for that 500 gram amount . . . rather than the much larger quantity imported by Defendant R. Defendant S is not accountable . . . for the other quantities imported by Defendant R because those quantities were not within the scope of his jointly undertaken criminal activity (i.e., the 500 grams).

U.S.S.G. § 1B1.3, cmt. 4(C)(vii).  By analogy, there is no evidence that Arroyos's agreement extended beyond the methamphetamine in the hotel.

*See United States v. Hammond*, 201 F.3d 346, 352 (5th Cir. 1999).  In finding otherwise, the district court clearly erred.  *See Smith*, 13 F.3d at 867–68.

That said, we will affirm.  With the disputed methamphetamine, Arroyos is liable for 2.14 kilograms; without it, 1.885 kilograms.  Either way her guidelines range remains the same.  That is because the base offense level for drug crimes involving 1.5 to 4.5 kilograms of methamphetamine is 36.  *See* U.S.S.G. § 2D1.1(a)(5).  Arroyos also does not argue that her sentence would have been any different.  Thus, the error was harmless.  *See United States v. King*, 979 F.3d 1075, 1081 (5th Cir. 2020); *United States v. Chon*, 713 F.3d 812, 822 (5th Cir. 2013).

## III.

Arroyos was accountable for 1.885 kilograms of methamphetamine. Although that is less than the amount for which she was sentenced, the difference does not affect her guidelines range.  We thus AFFIRM.